[Civ. No. 42271. Second Dist., Div. Five. May 6, 1975.]

WILLIAM TROTSKY et al., Plaintiffs and Respondents, v.
LOS ANGELES FEDERAL SAVINGS AND LOAN
ASSOCIATION et al., Defendants and Respondents;
ROBERT E. BARWIG, Ojbector and Appellant.

138

---

**COUNSEL**

Thomas E. Garcin for Objector and Appellant.

David Daar, Florence Bernstein and Rich & Ezer for Plaintiffs and Respondents.

McKenna, Fitting & Finch, Bernard Kolbor and Aaron M. Peck for Defendant and Respondent.

## Opinion

ASHBY, J.—Appellant Robert E. Barwig (hereinafter appellant) is a member of the class of plaintiffs represented by William and Rita Trotsky (hereinafter the Trotskys) in a class action brought on behalf of themselves and all other persons similarly situated, against respondent Los Angeles Federal Savings and Loan Association (hereinafter respondent). In response to notice of hearing on a proposed settlement of the class action, appellant entered an appearance and objected to the proposed settlement. The trial court overruled all objections and entered judgment approving the settlement.

The settlement relates to three clauses (clauses 9, 10, and 12) of a certain trust deed used by respondent which were alleged to be invalid. Appellant appeals from the judgment approving the settlement "insofar as said settlement agreement and the judgment entered thereon purports to settle or waive the claims of those borrowers from Los Angeles Federal Savings and Loan Association, whose interest rates were raised by said defendant pursuant to the provisions of clause 10" of the trust deed. We have determined that under the particular circumstances of this case the trial court should not have approved the inclusion of clause 10 claims in the settlement, and therefore the judgment should be reversed.

As a member of the affected class who appeared at the hearing in response to the notice, and whose objections to the proposed settlement were overruled, appellant is a party aggrieved, and has standing to appeal. (Code Civ. Proc., § 902.) This is true even though appellant could instead have "opted out," i.e., requested exclusion from the judgment. (See Civ. Code, § 1781, subd. (e).) As stated by the court in *Ace Heating & Plumbing Company* v. *Crane Company* (3d Cir. 1971) 453 F.2d 30, 33, deciding a similar question under rule 23 of the Federal Rules of Civil Procedure, ". . . It is possible that, within a class, a group of small claimants might be unfavorably treated by the terms of a proposed settlement. For them, the option to join is in reality no option at all. Rule 23 recognizes the fact that many small claimants frequently have no litigable claims unless aggregated. So, without court approval and a subsequent right to ask for review, such claimants would be faced with equally unpalatable alternatives—accept either nothing at all or a possibly unfair settlement. We conclude that appellants.have standing to appeal . . . ." (See also *Research Corporation* v. *Asgrow Seed Company* (7th Cir. 1970) 425 F.2d 1059, 1060; *Cohen* v. *Young* (6th Cir. 1942) 127

F.2d 721, 724, cert. den., 321 U.S. 778 [88 L.Ed. 1071, 64 S.Ct. 619].)[1]
Were the rule otherwise, a class member who objected in the trial court
to the terms of the settlement would be unable to secure appellate review
of the court's order approving the settlement.

## FACTS

In June 1969 the Trotskys filed the original complaint in Los Angeles
Superior Court on behalf of themselves and all persons who had within
four years prior to the filing borrowed money from respondent and
executed a certain form of trust deed securing the loan. The complaint
sought a declaration that three provisions of the trust deed were invalid,
and it additionally sought damages for monies collected by respondent
under those provisions. The three provisions were: (a) clause 9,
authorizing respondent to increase the interest rate on the loan by 1
percent per annum in the event of the borrower's failure to pay 6
consecutive monthly payments within 15 days of the due dates; (b)
clause 10, authorizing respondent to increase the interest rate on the loan
by one-half of 1 percent per annum for each one-fourth of 1 percent
per annum by which respondent increased the interest rate paid to its
savings account holders; and (c) clause 12, authorizing respondent to
impose a late charge of 4 percent on any installment paid more than 15
days after the due date.

In August 1969 the parties stipulated to the filing of a first amended
complaint, which differed only insignificantly from the original com-
plaint.

On January 8, 1970, also by stipulation of the parties, the Trotskys
filed a second amended complaint which differed quite materially from
the first amended complaint. Significantly, the second amended com-
plaint omitted any reference to clause 10, the provision allowing an
increased interest rate tied to an increase in savings account interest
rates.[2] The second amended complaint defined the class as those persons

---

[1] Our discussion will include reference to appropriate federal cases where direct
California authority is lacking. Cases arising under federal class action rules are relevant
in guiding California courts to adopt innovative procedures which will be fair to the
litigants and expedient in serving the judicial process. (*Vasquez* v. *Superior Court*, 4
Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].)

[2] Since the amendment dropping the clause 10 claims was made by stipulation, there
was apparently no inquiry by the court to determine if such amendment might possibly
prejudice the rights of the clause 10 class. See *Ensher* v. *Ensher, Alexander & Barsoom*,
187 Cal.App.2d 407, 410 [9 Cal.Rptr. 732]; *Yaffe* v. *Detroit Steel Corporation* (N.D. Ill.

who within the four years preceding filing of the action had executed agreements and trust deeds containing clause 9 and clause 12 and from whom respondent had collected late charges pursuant to one or both of those provisions. It was alleged that the Trotskys had been assessed late charges and increased interest under both of those provisions and that those provisions were invalid. The second amended complaint sought declaratory relief and actual and punitive damages.[3]

On October 20, 1971, apparently unaware of the *Trotsky* case, appellant filed a complaint against respondent in Barwig v. Los Angeles Federal Savings & Loan Assn., Los Angeles Superior Court case No. C 14608 (hereinafter the *Barwig* case), on behalf of himself and all persons or entities who had borrowed money from respondent and executed a promissory note and a certain trust deed (the same trust deed involved in the *Trotsky* case). Appellant alleged that pursuant to clause 10 of the trust deed, respondent had increased the interest rate on such loans by notice dated August 1, 1966. Appellant alleged that clause 10 was invalid and unenforceable. On behalf of his class he sought declaratory relief and the return of the monies collected pursuant to clause 10. The *Barwig* case did not involve any claims as to clause 9 or clause 12.[4]

Respondent answered the complaint in the *Barwig* case in December 1971. Certain discovery was had, and appellant submitted a motion for an initial hearing to determine class action issues. (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 820-821.) Respondent submitted a motion for summary judgment and a countermotion for a determination that the action was not a proper class action, and that appellant did not adequately represent the alleged class. The existence of the *Trotsky* case was not mentioned in the papers in support of these motions. The motion for summary judgment was denied on May 5, 1972, and the class action motion was continued. Under circumstances described *infra,* the hearing on this motion was taken off calendar, and there has not yet been

1970) 50 F.R.D. 481, 483; Dole, Jr., *The Settlement of Class Actions for Damages* (1971) 71 Colum.L.Rev. 971, 984. Cf. *Elias* v. *National Car Rental System, Inc.* (D. Minn. 1973) 59 F.R.D. 276, 277.

[3]Subsequently, on August 24, 1971, the Trotskys moved for permission to file further amendments stating additional causes of action relating to so-called impound accounts for taxes and insurance. This motion was continued, then taken off calendar, and eventually withdrawn.

[4]We note that clause 10 could be invoked against all borrowers for reasons beyond their control, i.e., an increase in passbook interest rates, whereas clauses 9 and 12 were applicable only to borrowers who defaulted in their payments.

a determination by the trial court in the *Barwig* case as to its propriety as a class action or the adequacy of appellant's representation of the class, nor has notice to the class been given in the *Barwig* case.

In June 1972 the Trotskys and respondent reached agreement upon settlement of the *Trotsky* class action. With court permission the class was redefined, for purposes of settlement, to be "all present mortgage loan borrowers" of respondent who in order to secure their respective loans executed the certain form of trust deed here involved. This removed from contention the claims of borrowers whose loans had been paid off, transferred or foreclosed.[5]

The settlement agreement purported to include not only the clause 9 and clause 12 claims alleged in the second amended complaint, but also clause 10 claims. In general the settlement agreement provided that respondent would modify its practices with respect to the three provisions, but that respondent would not pay damages and would be released from further liability. (Respondent at all times maintained that the provisions were valid and enforceable and denied any liability for monies collected.)

With respect to clause 12 (late charges for installments not paid within 15 days of due date) respondent agreed that as to class members respondent would observe the notice requirements of Civil Code section 2954.5, even though the statute applies only to loans made after January 1, 1971.

With respect to clause 9 (increased interest in the event of six consecutive late payments) respondent agreed, among other modifications, to limit such increase to one-half percent per annum and to revoke such increase (prospectively only) upon written request of the borrower in the event that each installment during the two years following such increase is paid on time and there are no other defaults.

With respect to clause 10 (variable interest rates) respondent agreed to certain modifications affecting loans made prior to November 23, 1970, the effective date of Civil Code section 1916.5. (As to loans made after that date, § 1916.5 rendered clause 10 invalid.) Respondent agreed to give notice of such increase within six months of a passbook rate

---

[5]It appears that clause 10 was exercised by respondent on approximately 2,800 loans in 1966 and 1967, and that of these loans approximately 1,000 had been paid off, transferred or foreclosed upon as of June 1972.

increase, and to deem the right to such increase waived upon failure to give timely notice. Respondent also agreed to revoke such increase (prospectively only), upon the written request of the borrower, in the event of a decline of the passbook interest rate to previous levels.

In return for these agreements respondent was, with certain exceptions, released and discharged "from any and all liability for [respondent's] assessment and/or collection of any Late Charges and/or Sums of Increased Interest from any member of the Class." The Trotskys personally received $1,920 in settlement of their individual claim that even if the provisions were valid the Trotskys did not make six consecutive late payments and therefore respondent wrongfully exercised clause 9 as to them.

The Trotskys and respondent made joint application to the court for orders setting a hearing on the proposed settlement and prescribing the form, manner and time of giving notice of the action and the proposed settlement. There had been no previous notice to the class in the *Trotsky* case. In their joint application the parties did not inform the court of the existence of the *Barwig* case. The court set the matter for hearing and approved the form and manner of notice suggested in the joint application. The notice described the litigation and proposed settlement but did not mention the existence of the *Barwig* case. The notice was mailed to the *Trotsky* class as temporarily defined, i.e., all then present mortgage loan borrowers who had executed the certain form of trust deed. Appellant was a member of that class.

In response to the notice, appellant entered objection to the settlement and appeared at the hearing through counsel. As stated in his notice of appearance and objections, the basis of appellant's objection was that in the *Barwig* case he sought to obtain on behalf of the class a refund or credit for all amounts collected or charged under clause 10 as well as a declaration that such clause was invalid and unenforceable in the future. Appellant therefore objected to the proposed settlement "only to the extent that it is contended by LA FED that a judgment entered by this Court on the basis of such settlement is binding in any manner upon the members of the class who are also members of the class in the Barwig action with respect to any of the issues in the Barwig action."

The record on appeal does not contain a reporter's transcript of the hearing on objections to the proposed settlement. The court approved the validity of the suit as a class action, overruled all objections and

approved the settlement. In its memorandum opinion the court dealt with the various objections which had been made, stating in part:

"The most common objection to the proposed settlement is that the class of plaintiffs does not obtain enough benefits from it. Particularly, the objection is directed to the fact that the class will receive no monetary rewards. The Court has carefully reviewed the pleadings herein and, in fact, the entire file. The Court concludes that the proposed settlement is a fair and reasonable one, having in mind the likely results of the litigation as compared with the consideration received for not going forward with it. [Citation.] While some members of the class of plaintiffs may be disappointed that the settlement does not provide them with more benefits, the Court notes the not insignificant possibility that they would receive no benefits whatsoever if the case proceeds to trial.

". . . . . . . . . . . . . . . . . .

"Finally, the objection is made that the settlement here may result in the principle of collateral estoppel being applied to the purported class action in *Barwig* v. *Los Angeles Federal Savings & Loan Association,* Civil Action No. C 14608, since there may be an overlap of the class of plaintiffs between these two cases and since the defendant in each case is the same. The Court first notes that the present case was filed prior to *Barwig* and should not be influenced by the mere filing of the latter case. In any event, this particular objection is insufficient to upset the settlement of this case. As for the merits, if any, of the collateral estoppel argument, they will have to be determined in the *Barwig* case. *Barwig's* objections to this settlement are a matter of record, and if such is sufficient to avoid collateral estoppel, then *Barwig* has protected himself. This Court regards the settlement of the instant case as fair and reasonable and will not deny the class of plaintiffs herein the benefits of this settlement merely because of the pendency of the Barwig case."

The court also approved the payment by respondent to the Trotskys' attorneys of $25,000 in attorneys' fees pursuant to the agreement. On November 9, 1972, the court entered judgment in accordance with the terms of the settlement, and it is that judgment from which appellant appeals.[6]

The *Trotsky* judgment was brought to the attention of the trial court in the *Barwig* case. That court has deferred determination of the class

---

[6]Appellant's petition for a writ of prohibition was denied without opinion in *Barwig* v. *Superior Court,* Second Civil No. 40976.

action issues and stayed further proceedings pending final determination of this appeal.

### Issues Presented

 Appellant contends the trial court erred in approving the inclusion of clause 10 claims in the *Trotsky* settlement. We agree. We hold that in the circumstances of this case the purported settlement between the Trotskys and respondent as to clause 10 is not valid, and that the judgment must therefore be reversed.

The purported clause 10 settlement was outside the scope of the second amended complaint. In that complaint the Trotskys contested only clauses 9 and 12, and made no allegations whatsoever concerning clause 10. They did not define the class to include clause 10 claimants, and did not purport to represent such class. In the absence of further amendments to the pleadings, the Trotskys could not settle the claims of a class of plaintiffs they did not represent. Furthermore, there is evidence that to the extent the Trotskys had a claim against respondent arising out of clause 10, it was not typical of the class claims purportedly settled in the agreement.

In addition, we disapprove of the manner in which the clause 10 claims were added to the settlement. At the time of the filing of the second amended complaint, which was by stipulation of the parties, respondent was apparently quite willing to have clause 10 excluded from the scope of the *Trotsky* case. Between the filing of the second amended complaint and the date of the settlement agreement, the *Barwig* case, challenging the validity of clause 10, was filed. We think it apparent that the intended effect, at least so far as respondent was concerned, of including clause 10 in the *Trotsky* settlement was to foreclose the *Barwig* case by binding the clause 10 class to the terms of the *Trotsky* agreement. Ordinarily the judgment in a class action is res judicata and binding on all members of the class who receive notice and who fail to request exclusion from the class action. (See *Darr* v. *Yellow Cab Co.,* 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732]; *Weaver* v. *Pasadena Tournament of Roses,* 32 Cal.2d 833, 842 [198 P.2d 514].)

In the moving papers for court orders setting a hearing on the proposed settlement and providing for notice to the class, respondent, who was obviously aware of the *Barwig* case, failed to inform the trial judge of its existence and the significance of the *Trotsky* settlement to

that case. Nor did the notice mailed to the temporary class, i.e., all borrowers presently subject to the trust deed, inform the class about the *Barwig* case. In our view the failure to give notice to the trial court and to the class concerning the existence of the *Barwig* case and the effect of the *Trotsky* settlement upon it prevented a full and fair consideration of the adequacy of the settlement.[7]

## DISCUSSION

■ It is elementary that the named plaintiff in a class action must be a member of the class he purports to represent. (*La Sala* v. *American Sav. & Loan Assn.,* 5 Cal.3d 864, 875 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.,* 37 Cal.App.3d 193, 200 [112 Cal.Rptr. 144]; *Payne* v. *United California Bank,* 23 Cal.App.3d 850, 859-860 [100 Cal.Rptr. 672].) The plaintiff must be a person who will fairly and adequately protect the interests of the class and whose claims or defenses are typical of the claims or defenses of the class. (Civ. Code, § 1781, subd. (b)(3), (4); Fed. Rules Civ. Proc., rule 23(a) (3), (4).) It is the fact that the class plaintiff's claims are typical and his representation of the class adequate which gives legitimacy to permitting him to bind class members who have notice of the action. (See *Hansberry* v. *Lee,* 311 U.S. 32, 43-44 [85 L.Ed. 22, 27-28, 61 S.Ct. 115, 132 A.L.R. 741]; *City of San Jose* v. *Superior Court,* 12 Cal.3d 447, 460 [115 Cal.Rptr. 797, 525 P.2d 701]; *Fallon* v. *Superior Court,* 33 Cal.App.2d 48, 50-51 [90 P.2d 858].)

Based upon the allegations of the second amended complaint, it is clear that the Trotskys were not, and did not claim to be, adequate representatives of those borrowers having claims against respondent arising out of clause 10. The class was defined in the second amended complaint as those persons who within the four years preceding the filing of the action executed agreements and trust deeds containing clauses 9 and 12 and from whom respondent had collected late charges and increased interest pursuant to those provisions. It was alleged that clauses 9 and 12 were invalid and unenforceable. That complaint did not define the class to include borrowers subject to clause 10, and made no allegations whatsoever with respect to the validity of clause 10. Thus the Trotskys had no "claims or defenses . . . typical of . . . the class" of

---

[7]At oral argument in this court, it was alleged that the Trotskys and their counsel were also unaware of the *Barwig* case when they negotiated the settlement, and did not learn of it until appellant entered objection to the settlement. Respondent disputed this allegation at oral argument. The record contains nothing which resolves the issue.

borrowers subject to clause 10 because they alleged none. It certainly cannot be said that one who has not even *alleged* the claims of borrowers subject to clause 10 has "devote[d] sufficient energy to the prosecution of the action." (*La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d at p. 872.)

■ The fact that the court approved a temporary definition of the class, for purposes of settlement, to include all present mortgage loan borrowers who executed the particular trust deed, could not itself render the Trotskys adequate class representatives of any and all claims arising out of the trust deed. It appears that in wording this particular definition the parties were mainly concerned with providing a workable method of sending notice of the proposed action, i.e., to the borrowers still on respondent's books who had executed the particular trust deed. Obviously the Trotskys could not have bound the class to an agreement, for instance, that "except as herein provided it is agreed that all clauses and conditions of the trust deed are valid and enforceable," because the Trotskys had not contested each and every condition in the trust deed and could not possibly adequately represent all classes of claims arising out of the trust deed. The same rationale applies here as to clause 10.

Aside from the Trotskys' failure to assert clause 10 claims in the second amended complaint, there is additional evidence that they may not have given adequate representation to the clause 10 claimants. It is conceded that although clause 10 was contained in the Trotskys' trust deed, that provision was never exercised as to their loan, and therefore the Trotskys had not personally suffered any monetary damage as a result of clause 10. ■ While the fact that the Trotskys had not themselves suffered monetary damage might not *necessarily* preclude their giving adequate representation to the class (*Anthony* v. *General Motors Corp.,* 33 Cal.App.3d 699, 704 [109 Cal.Rptr. 254]), it is a strong factor to be considered in light of the other circumstances of this case. (See *Air Line Stew. & S. Ass'n, Loc. 550* v. *American Airlines, Inc.* (7th Cir. 1973) 490 F.2d 636, 639-642, cert. den., 416 U.S. 993 [40 L.Ed.2d 773, 94 S.Ct. 2406].)

■ Respondent contends that the failure of the Trotskys to contest clause 10 in the second amended complaint is insignificant, because it could have been remedied by the simple formality of amending the complaint prior to judgment. We recognize that it is not unusual for defendants to insist upon amendments to the pleadings broadening the scope of the action prior to settlement, in an effort to "cover everything"

and insure that the settlement will in fact result in an end to litigation. (*Pergament* v. *Frazer* (E.D.Mich. 1950) 93 F.Supp. 13, 20, affd. sub nom. *Masterson* v. *Pergament,* 203 F.2d 315, cert. den., 346 U.S. 832 [98 L.Ed. 355, 74 S.Ct. 33]; *Fox* v. *Glickman Corporation* (S.D.N.Y. 1966) 253 F.Supp. 1005, 1013. See *Winkelman* v. *General Motors Corporation* (S.D.N.Y. 1942) 48 F.Supp. 490, 495-496; Haudek, *The Settlement and Dismissal of Stockholders' Actions; Pt. II* (1969) 23 Sw. L.J. 765, 773.)

The fact remains, however, that here the complaint was not amended to encompass the terms of the settlement.[8] Without amendment of the complaint the purported settlement of clause 10 claims was outside the scope of the action and was not valid.

Furthermore, in the circumstances of this case the conflict between the second amended complaint and the settlement terms was far more serious than a pleading technicality. We have already referred to the substantial likelihood that the Trotskys' personal claim as to clause 10 was not typical of the class and that therefore they could not adequately represent such class. In addition, the failure to include reference to the existence of the *Barwig* case in the moving papers and the notice to the class impaired the ability of the court to consider whether it was desirable to approve this settlement of clause 10, assuming that the complaint could have been amended to allow it.

■ Any attempt to include in a class settlement terms which are outside the scope of the operative complaint should be closely scrutinized by the trial court to determine if the plaintiff genuinely contests those issues and adequately represents the class. (See *Heddendorf* v. *Goldfine* (D.Mass. 1958) 167 F.Supp. 915, 921, 928.) Thus in *Winkelman* v. *General Motors Corporation, supra,* 48 F.Supp. 490, 496, 499, although the court concluded that it had the power to approve the inclusion of additional claims in the settlement, the court cautioned that broad general releases should be avoided, and suggested deletion of some of the proposed additional claims.

In order to exercise this power of careful scrutiny over the inclusion of additional claims in the settlement, the trial court has the right to expect the settling parties to disclose the effect of such terms at the time the proposed settlement is brought to the attention of the court. For instance,

---

[8]Furthermore, the Trotskys' counsel stated, in his declarations in support of the settlement, that if the settlement were not approved, the parties were prepared for trial based on the class definition contained in the second amended complaint.

in *Pearson* v. *Prospect Hill Apartments, Inc.,* 19 Misc.2d 51 [195 N.Y.S.2d 471, 474], the court approved a settlement of numerous representative shareholder claims as well as derivative claims which were added as part of the settlement. The court rejected the contention that the settlement could not include the amended claims, stating, "[The amendment of the complaints to state derivative causes of action] *was done openly with the avowed purpose of thereby disposing of these claims in the settlement and the various counsel were informed of what was being done.*" (Italics added.)

There was no such candor and openness in the instant case. It seems obvious that the intended effect, at least so far as respondent was concerned, of including clause 10 in the *Trotsky* settlement was to foreclose the *Barwig* case. But when the parties requested the court to set a hearing on the proposed settlement, the court was not informed that the *Barwig* case was then pending in the superior court nor was it informed of the significance to that case of adding clause 10 to the *Trotsky* settlement. Furthermore, the notice mailed to the temporary class did not inform class members of the existence of the *Barwig* case and the significance of the *Trotsky* settlement in that respect. The existence of the *Barwig* case came to light in the trial court only because appellant, a member of the temporary class, received notice of the proposed settlement and entered his objections thereto.

■ Even if it were assumed that the Trotskys could have amended the complaint again to include a challenge to clause 10, and that, had they done so, the Trotskys might have fairly and adequately represented the interests of the clause 10 class, the attempted inclusion of new claims in the settlement required the prompt and candid disclosure of its significance to the trial court and the class, so that the fairness of the settlement could be considered with full knowledge of the facts. Instead, in this case the existence of the *Barwig* case was kept from the court and the class. To approve the inclusion of clause 10 in the settlement under such circumstances would make a mockery of the salutary principle that, in order to prevent fraud, collusion or unfairness to the class, the settlement or dismissal of a class action requires court approval and notice to the class. (*La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d 864, 872. See Civ. Code, § 1781, subd. (f); *Ensher* v. *Ensher, Alexander & Barsoom, supra,* 187 Cal.App.2d 407, 410; Fed. Rules Civ. Proc., rule 23(e), 28 U.S.C.A.) Our Supreme Court recently cautioned that the class action device, designed to foster justice, also carries with it substantial dangers of injustice to class members who may be deprived of their rights by the actions of the class plaintiff. (*City of San Jose* v.

*Superior Court, supra,* 12 Cal.3d 447, 458-459.) Just such a danger is presented by the circumstances of this case.

The trial court did, eventually, learn about the *Barwig* case when appellant entered his appearance in objection to the settlement. The court took judicial notice of the *Barwig* file and the claims and defenses raised there[9] and it nevertheless approved the settlement. ■ The trial court has broad discretion to determine whether the named plaintiff fairly and adequately represents the class (*Scott* v. *City of Indian Wells,* 6 Cal.3d 541, 550 [99 Cal.Rptr. 745, 492 P.2d 1137]; *La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d 864, 871; *Residents of Beverly Glen, Inc.* v. *City of Los Angeles,* 34 Cal.App.3d 117, 129 [109 Cal.Rptr. 724]) and whether the proposed settlement is a fair one. (*Ace Heating & Plumbing Company* v. *Crane Company, supra,* 453 F.2d 30, 34; *Young* v. *Katz* (5th Cir. 1971) 447 F.2d 431, 432; *United Founders Life Ins. Co.* v. *Consumers Nat. Life Ins. Co.* (7th Cir. 1971) 447 F.2d 647, 655.) In the absence of a reporter's transcript of the hearing on objections to the settlement, we ordinarily would assume that the "evidence" and arguments presented there would support the trial court's express and implied findings in favor of the settlement. (*Kubon* v. *Kubon,* 51 Cal.2d 229, 232 [331 P.2d 636]; *O'Callaghan* v. *Southern Pac. Co.,* 202 Cal.App.2d 364, 368 [20 Cal.Rptr. 708].) However, neither the court's minute order of the hearing nor the recitation in the judgment indicates that any new sworn testimony or documentary evidence was presented at the hearing. The facts that the Trotskys suffered no escalation of interest under clause 10, that they did not contest clause 10 in the second amended complaint, and that respondent did not notify the court or the class of the existence of the *Barwig* case, are undisputed.

Even assuming that the record of the hearing would tend to support the trial court's findings, this case could have taken a completely different turn had the parties disclosed to the court the *Barwig* case and its significance prior to setting a hearing on approval of the proposed settlement, as should have been done.

First, assuming that the Trotskys thereafter desired to contest clause 10 in their case, the clause 10 issue then clearly overlapped the claims being made in the *Barwig* case, which was then pending in the same superior

---

[9]Respondent had moved for summary judgment in the *Barwig* case on the ground that appellant's claim was barred by the statute of limitations, and that therefore he could not adequately represent the class. The motion was denied on grounds a triable issue of fact was presented.

court. Such overlap demanded consideration of whether the cases should be consolidated pursuant to Code of Civil Procedure section 1048, subdivision (a).[10] Thus prompt disclosure of the existence of the *Barwig* case was required not only to assure fairness to the clause 10 class but also to promote the efficient administration of justice in the Los Angeles Superior Court. Section 427.7(a) of the Los Angeles Superior Court Class Action Manual explicitly recognizes the propriety of consolidation of class actions involving similar issues.[11] Similarly the new rules for coordination of civil actions in different courts involving common questions of fact or law (see Code Civ. Proc., §§ 404-404.8; Cal. Rules of Court, rules 1501-1550) contemplate that the existence of such actions will be disclosed to the court by parties having knowledge of them.[12]

Had the trial court been forewarned of the apparent overlap between the *Trotsky* and *Barwig* cases, it could have considered consolidating them. Had they been consolidated prior to setting a hearing on approval of the settlement, the outcome of the case might have been quite different. For instance, if the cases had been consolidated, appellant and his counsel would have had a greater role to play in negotiating the terms of the settlement and the language of the notice to the class.

▮ Furthermore, no mention was made of the *Barwig* case in the notice sent to the temporary class. The notice given to the class must fairly apprise the class members of the terms of the proposed compro-

---

[10]Code of Civil Procedure section 1048, subdivision (a), reads as follows: "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

[11]Section 427.7 of the Los Angeles Superior Court Manual for Conduct of Pretrial Proceedings on Class Action Issues provides in part as follows:
"Additional Issues.
"Certain issues, although not always unique to class actions, frequently arise in them and are appropriate for a pretrial order after hearing . . . . Among these issues are:
"(a) CONSOLIDATION, SEVERANCE OR ABATEMENT. A motion to consolidate with, or sever from, one or more other pending actions, to abate the instant action until certain other pending actions have proceeded to judgment and similar motions based on the similarity of issues with those in other pending actions may be made. (Motions to coordinate with other pending actions pursuant to CCP Secs. 404 *et seq.* may be heard concerning all actions filed after January 1, 1974.)"

[12]Under rule 1521(a)(4) a petition for coordination is required to include not only the title of the actions sought to be coordinated but also "the complete title of any other action known to the petitioner to be pending in a court of this state that shares a common question of fact or law with the included actions, and a statement of the reasons for not including such other action in the petition for coordination."

mise and of the options open to dissenting class members. (*Philadelphia Housing Auth.* v. *American R. & S. San. Corp.* (E.D.Pa. 1970) 323 F.Supp. 364, 378, affd. in part and mod. in part sub nom., *Ace Heating & Plumbing Company* v. *Crane Company* (3d Cir. 1971) *supra,* 453 F.2d 30; *Air Lines Stewards, etc., Loc. 550* v. *American Airlines, Inc.* (7th Cir. 1972) 455 F.2d 101, 108.) The notice must be structured to enable class members rationally to decide whether to intervene or object, "opt out," or accept the settlement. (*Milstein* v. *Werner* (S.D.N.Y. 1972) 57 F.R.D. 515, 518. See also *Winkelman* v. *General Motors Corporation, supra,* 48 F.Supp. 490, 494; *Feder* v. *Harrington* (S.D.N.Y. 1972) 58 F.R.D. 171, 177; *Cannon* v. *Texas Gulf Sulphur Company* (S.D.N.Y. 1972) 55 F.R.D. 308, 313, fn. 2.) Even if it were assumed that the *Trotsky* complaint could be amended to include clause 10, and that it was not mandatory to consolidate the two cases, the existence of another purported class action relating to clause 10 would have been highly significant to the members of the temporary class in deciding whether they should object to the *Trotsky* settlement or request exclusion from the class. Given notice that the *Barwig* case also involved clause 10, class members would have had a powerful incentive to investigate to determine whether the Trotskys or appellant better represented their interests.[13]

Upon such investigation, class members might have presented additional evidence or objections at the hearing. Additional objections might have persuaded the trial court that the Trotskys did not adequately represent the clause 10 class or that clause 10 should be excluded from the *Trotsky* settlement or be modified.[14] Other class members might have opted out of the *Trotsky* case without appearing at the hearing because they preferred to be represented by appellant.[15]

---

[13]We do not suggest that the notice should advise class members regarding litigation strategy or the comparative merits of the *Trotsky* and *Barwig* cases. Given notice of the existence of the *Barwig* case, class members could determine that for themselves.

[14]Of the more than 6,000 borrowers to whom notice was sent, only a few filed objections to the settlement. Twenty-eight parties elected to opt out.

[15]Clause 9 and clause 12 were applicable only to borrowers who were late in making payments. Clause 10, on the other hand, could be invoked against a borrower because of circumstances wholly beyond his control, i.e., respondent's decision to increase the interest on passbook accounts. Some borrowers might be willing to forego the relief obtained by the Trotskys on clauses 9 and 12 in order to obtain the chance for a possibly more favorable outcome on clause 10 in the *Barwig* case. Appellant contends that the *Trotsky* settlement of clause 10 is unfavorable not only because no damages were received by the class but also because the agreement, although providing a means of reducing the loan rate when passbook rates decline, puts the burden on the borrower of initiating a written request for such reduction.

## DISPOSITION

We must now consider what disposition is required because of the erroneous inclusion of clause 10 claims in the judgment. Appellant has appealed from the judgment only "insofar as said settlement agreement and the judgment entered thereon purports to settle or waive the claims of those borrowers from LOS ANGELES FEDERAL SAVINGS AND LOAN ASSOCIATION, whose interest rates were raised by said defendant pursuant to the provisions of clause 10" of the trust deed. Appellant does not question any other portions of the settlement agreement. Respondent argues, however, that if the portion of the judgment relating to clause 10 is improper, the judgment in its entirety should be reversed.

An appeal from a portion of a judgment is permitted when that portion is severable from the other provisions of the judgment. But where the portion appealed from is interdependent on the portion not attacked, the appeal operates to bring all of the nonseverable portions before the appellate court. (*American Enterprise, Inc.* v. *Van Winkle,* 39 Cal.2d 210, 216-217 [246 P.2d 935].) Justice between the parties may in some circumstances require reversal of the judgment in its entirety. *(Kelly* v. *Sparling Water Co.,* 52 Cal.2d 628, 634-635 [343 P.2d 257].)

In the circumstances of this case we are unable to say that the portion of the judgment relating to clause 10 can be severed from the remainder of the judgment. This is because this judgment came about as a result of a settlement agreement between the parties, rather than a trial on the merits. We have no way of knowing whether the parties considered the different portions of the agreement to be interdependent on each other, that is, whether a concession as to one clause might have been given as a quid pro quo for an advantage as to a different clause. For instance, it is possible that respondent was willing to give more relief on clauses 9 and 12 in order to obtain what respondent believed to be a favorable settlement on clause 10. That the parties may have wished to withdraw from the agreement in the event of modification by the court is further indicated by the provision of the settlement agreement which states that it shall not become effective "unless and until the court in which the Litigation is pending shall have entered its judgment or order approving all, and not less than all, of the terms and conditions of this Settlement Agreement and such judgment or order thereafter shall have become final and nonappealable."

Reversal of the judgment in its entirety will place the parties back in their positions prior to settlement, when the court and the class should have been informed of the relevant circumstances. This will permit the court to consider consolidation of the cases, the proper role of appellant or the Trotskys as representing the clause 10 class, and notification of the class.

We find no merit to the Trotskys' contention that the judgment can be affirmed on the ground that the release clause is ineffective against class members who were unaware of the *Barwig* case. The Trotskys' argument runs as follows: Under Civil Code section 1542, "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." It is argued that because class members were not made aware of the *Barwig* case they will not be bound by the release of clause 10 claims in the judgment.

This argument is erroneous because it confuses knowledge of the *Barwig* case with knowledge of a "claim." The notice mailed to the *Trotsky* class *did* state that clause 10 was contested in "[t]he various complaints on file"; the notice described the terms of respondent's agreement to modify its practices regarding clause 10; and the notice stated that "[i]n consideration of the foregoing described agreements of the Association, the Class has agreed to release the Association from all of the Claims, including, but not limited to, any liability which the Association might have in respect to its past assessment and/or collection of any Late Charges and/or Sums of Increased Interest from any member of the Class, . . ."

Thus it cannot be said that class members were unaware of the existence of clause 10 claims within the meaning of Civil Code section 1542. They were merely unaware that an additional class plaintiff, appellant, was asserting similar claims in another case then pending in superior court.

Therefore we conclude that reversal of the judgment in its entirety is required by the circumstances of this case.

The judgment is reversed and the cause remanded to the superior court for further proceedings consistent with the views expressed in this opinion.

Kaus, P. J., and Hastings, J., concurred.