Filed 7/2/15  Anaya v. QuickTrim CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| TERESA ANAYA et al., | D067432 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. CIVVS1201177) |
| QUICKTRIM, LLC et al., | |
| Defendants and Respondents; | |
| SANDRA MONSALVE, | |
| Objector and Appellant. | |


APPEAL from a judgment of the Superior Court of San Bernardino County, Bryan F. Foster, Judge.  Affirmed.

Bursor & Fisher, Scott A. Bursor, L. Timothy Fisher, Annick M. Persinger and Julia A. Luster, for Objector and Appellant Sandra Monsalve.

Kabateck Brown Kellner, Brian S. Kabateck, Richard L. Kellner and Lina Melidonian for Plaintiffs and Respondents Teresa Anaya et al.

Posner Law Corporation, Ashley D. Posner; Nagel Rice, Bruce Nagel and Diane E. Sammons for Defendants and Respondents Quicktrim, LLC et al.

INTRODUCTION

Teresa Anaya filed a class action against QuickTrim, LLC and others (collectively QuickTrim), alleging QuickTrim's product labeling and packaging improperly claimed QuickTrim's products had weight loss benefits. The trial court subsequently approved a settlement agreement providing for injunctive relief and requiring QuickTrim to reimburse class members a portion of their purchase price or provide them with coupons redeemable for future product purchases. The trial court also awarded class counsel $250,000 in attorney fees and costs.

Class member and objector Sandra Monsalve appeals, contending the trial court abused its discretion in approving the settlement because the class did not receive sufficient notice of or adequate relief from the settlement.[1] She additionally contends the trial court abused its discretion by awarding excessive attorney fees to class counsel. We disagree with these contentions and affirm the judgment

BACKGROUND

In December 2010 class counsel, while representing a different plaintiff, sent QuickTrim a letter alleging QuickTrim violated the California Consumers Legal

---

[1]    Monsalve is also a class member in a competing federal class action. (See *Cowan, et al. v. Windmill Health Products, LLC, et al.* (S.D.N.Y. 2012, No. 1:12-cv-01541) (*Cowan* action).)

2

Remedies Act (Civ. Code, § 1750 et seq.) (CLRA). The letter demanded QuickTrim provide refunds to the plaintiff and others like her for their product purchases.

Upon receiving the letter, QuickTrim contacted class counsel and initiated settlement discussions. For more than a year, the parties engaged in informal discovery and ongoing, but unsuccessful, settlement negotiations. During this time, class counsel determined Anaya would be a more suitable class representative.

In March 2012 Monsalve's counsel filed the *Cowan* action. (See fn. 1, *ante*.) Six days later Anaya filed the instant class action, alleging violations of the CLRA, Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), False Advertising Law (Bus. & Prof. Code, § 17500, et seq.) and other state law claims. The action was filed on behalf of all United States residents who purchased certain QuickTrim products for personal use during the preceding four years. In May 2012 Anaya filed a first amended complaint adding a cause of action for violation of the federal Magnuson-Moss Warranty Act (15 U.S.C., § 2301 et seq.) and broadening the class definition to include all United States residents who "purchased the QuickTrim Weight Loss System or any of its component products for personal use." Meanwhile, the parties continued their settlement efforts and, with the assistance of a respected, retired jurist serving as mediator, reached a preliminary settlement.

In October 2012 after the parties finalized their settlement agreement, Anaya filed a motion seeking preliminary approval of the settlement. (See Cal. Rules of Court, rule 3.769(c).) She concurrently sought approval to file a second amended complaint adding

3

numerous defendants and claims. The settlement was intended to dispose of all claims nationwide, effectively extinguishing the *Cowan* action.

The settlement provided that class members who purchased QuickTrim products directly from QuickTrim would automatically receive refunds of 50 percent of the products' purchase price or, at their election, coupons redeemable for double the products' purchase price. Class members who purchased QuickTrim products from a retail store and who had proof of purchase would receive refunds of 50 percent of the products' purchase price or coupons redeemable for the products' purchase price. Class members who purchased QuickTrim products from a retail store, but did not have proof of purchase, would receive refunds of 25 percent of the products' purchase price up to the amount of two products or coupons redeemable for up to 35 percent of the purchase price of two products, not to exceed $42. The settlement additionally required QuickTrim to redesign its labeling and packaging to restate the nature of its products and their benefits.

The settlement further required class counsel to apply for an award of attorney fees, not to exceed $250,000. QuickTrim agreed not to oppose the application.

Monsalve objected to preliminary approval of the proposed settlement on multiple grounds, including the sufficiency of the plan for noticing class members of the settlement and the adequacy of the proposed settlement. After requiring improvements to the noticing plan, the court granted preliminary approval of the proposed settlement over Monsalve's objections.

After receiving preliminary approval of the settlement, QuickTrim created a settlement Web site containing a list of frequently asked questions, a detailed class

4

notice, a claim form, the settlement agreement, and the preliminary approval order. QuickTrim then provided notice of the settlement through multiple avenues directed at people with demographic profiles similar to likely class members. The avenues included those used by QuickTrim to advertise its products. Specifically, QuickTrim sent a press release to 4,200 print and broadcast outlets and 5,500 online press outlets through the United States, including the Associated Press. It placed print ads in In Touch, Life & Style, US Weekly, National Enquirer, Globe, Shape, Star, and OK! Magazine, which had a combined readership of 53,108,000 people. It placed television ads on several cable television networks, including Bravo, Food Network, Travel, Oxygen, BET, Oprah Winfrey Network, Soap, TBS, USA, and Women's Entertainment. It placed digital ads on Facebook, Google, Yahoo, Bing, and other search portals and Web sites, including its own. Finally, it sent e-mail ads to over 8 million people.

QuickTrim's noticing efforts produced over 1.4 million hits to the settlement Web site and 15,895 class member claims. Of the 4,583 claimants who purchased directly from QuickTrim, 19 requested coupons and the remainder automatically received compensation. Of the 69 claimants who purchased from a retailer and had proof of purchase, one requested a coupon and the remainder requested compensation. Of the 11,243 claimants who purchased from a retailer and did not have proof of purchase, 1,159 requested coupons and the remainder requested compensation. The combined estimated value of the claims was $247,484.68.

In July 2013 Anaya moved for final approval of the settlement agreement. She concurrently moved for an award of $250,000 in attorney fees and costs to class counsel.

Monsalve objected to final approval of the settlement on essentially the same grounds she objected to preliminary approval of it. She also argued the settlement release was overly broad and the settlement appeared to be the product of a reverse auction. She opposed the attorney fees motion on the ground the requested fees were excessive.

Over Monsalve's objections, the trial court granted final approval of the settlement, finding the settlement was reached through arm's length negotiations, the investigation was sufficient to evaluate the class claims, the settlement was adequate, class counsel had the requisite experience to represent the class, Monsalve was the only class member who objected to the settlement, and there were questions as to the strength and ability to prove the class claims. In a later proceeding, after requiring further substantiation of class counsel's work on the case, the trial court awarded class counsel $250,000 in combined attorney fees and costs.

## DISCUSSION

"In general, questions whether a settlement was fair and reasonable, whether notice to the class was adequate, whether certification of the class was proper, and whether the attorney fee award was proper are matters addressed to the trial court's broad discretion. [Citation.] Our review is therefore limited to a determination whether the record shows 'a clear abuse of discretion.' [Citation.] Our task is not to determine in the first instance whether the settlement was reasonable or whether certification was appropriate. We determine only whether the trial court acted within its discretion in making the rulings that it did." (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 234-235 (*Wershba*); *Cho v. Seagate Technology Holdings, Inc.* (2009) 177

6

Cal.App.4th 734, 743 (*Cho*).) However, "[t]o the extent that it appears the trial court's decision was based on improper criteria or rests upon erroneous legal assumptions, these are questions of law warranting our independent review." (*Wershba*, at p. 235.)

I

*Class Notice*

Monsalve contends the notice to the class members was insufficient because it failed to reach most of the class. As support for this contention, she notes only a small percentage of potential class members became claimants. She also asserts the noticing plan did not require individual notice to potential class members identifiable from retailer records; the noticing plan did not comply with Civil Code section 1781, subdivision (d); and the noticing plan did not fully comply with rule 3.766(d)(3)-(5) of the California Rules of Court.

A

Trial court management of a class action is governed by California Rules of Court, rule 3.760 et seq. When a class action settles, these rules require that "notice of the final approval hearing must be given to the class members in the manner specified by the court. The notice must contain an explanation of the proposed settlement and procedures for class members to follow in filing written objections to it and in arranging to appear at the settlement hearing and state any objections to the proposed settlement." (Cal. Rules of Court, rule 3.769(f).)

"The trial court ' "has virtually complete discretion as to the manner of giving notice to class members." ' " (*Cellphone Termination Fee Cases* (2010) 186 Cal.App.4th

7

1380, 1390 (*Cellphone*).) "In determining the manner of the notice, the court must consider: [¶] (1) The interests of the class; [¶] (2) The type of relief requested; [¶] (3) The stake of the individual class members; [¶] (4) The cost of notifying class members; [¶] (5) The resources of the parties; [¶] (6) The possible prejudice to class members who do not receive notice; and [¶] (7) The res judicata effect on class members." (Cal. Rules of Court, rule 3.766(e).) We review the trial court's determination for abuse of discretion. (*Cellphone*, *supra*, at p. 1390.) "The standard is whether the notice has 'a reasonable chance of reaching a substantial percentage of the class members.' " (*Wershba*, *supra*, 91 Cal.App.4th at p. 251.)

B

1

QuickTrim's claims administrator estimated there were several hundred thousand potential class members. As described above, QuickTrim utilized multiple means to reach these potential class members, including individual notice to direct purchasers as well as demographically targeted print ads, digital ads, social media ads, television ads, and e-mails. Based on QuickTrim's noticing plan and the claims administrator's past experience handling similar class actions, the claims administrator estimated it would receive 6,000 claims. QuickTrim's noticing plan produced results far in excess of these expectations and far in excess of the results produced in other similar class actions handled by the claims administrator. Although Monsalve is unsatisfied with the claims rate and regards it as proof of the noticing plan's insufficiency, she has not directly challenged the claims administrator's evidence or produced any countervailing evidence

8

of what would be a reasonable claims rate for this type of class action. She, therefore, has not established any inadequacy in the noticing plan based on the claims rate.

2

Monsalve additionally faults the court for not requiring QuickTrim to search retailer records for potential class members to whom individual notice could be sent. However, the court was not obliged to do this. "If personal notification is unreasonably expensive or the stake of individual class members is insubstantial, or if it appears that all members of the class cannot be notified personally, the court may order a means of notice reasonably calculated to apprise the class members of the pendency of the action—for example, publication in a newspaper or magazine; broadcasting on television, radio, or the Internet; or posting or distribution through a trade or professional association, union, or public interest group." (Cal. Rules of Court, rule 3.766(f); see *Cho*, *supra*, 177 Cal.App.4th at p. 746 [when it is unnecessary or infeasible to personally notify all potential class members of an action, the court may require notice by other means reasonably calculated to apprise the class members of the action's pendency].)

3

The court's failure to require newspaper publication under Civil Code section 1781, subdivision (d), also did not render the notice to the class members insufficient. This code section provides: "If [a consumer action under the CLRA] is permitted as a class action, the court may direct either party to notify each member of the class of the action. The party required to serve notice *may*, with the consent of the court, if personal notification is unreasonably expensive or it appears that all members of the class cannot

9

be notified personally, give notice as prescribed herein by publication in accordance with Section 6064 of the Government Code in a newspaper of general circulation in the county in which the transaction occurred." (Civ. Code, § 1781, subd. (d), italics added.) On its face, this code section is permissive, rather than mandatory. It authorizes a court to permit publication notice in specified circumstances, but it does not require publication notice in those circumstances nor does it preclude other forms of notice in those circumstances.

4

The fact QuickTrim's publication, retail, and e-mail ads did not fully comply with the California Rules of Court's content requirements also did not render notice to the class insufficient. The California Rules of Court generally require class notice to include "[a] procedure for the member to follow in requesting exclusion from the class," "[a] statement that the judgment, whether favorable or not, will bind all members who do not request exclusion," and "[a] statement that any member who does not request exclusion may, if the member so desires, enter an appearance through counsel." (Cal. Rules of Court, rule 3.766(d)(3)-(5).) However, the trial court had the discretion to grant relief from compliance with these requirements. (Cal. Rules of Court, rule 3.760(b).) In addition, the publication, retail, and e-mail ads referred potential class members to the settlement Web site, which Monsalve acknowledges had a fully compliant notice. Appellate courts have previously sanctioned this two-step process of using a summary notice to direct potential class members to a Web site containing a more detailed notice. (See *Cellphone*, *supra*, 186 Cal.App.4th at pp. 1391-1392; *Chavez v. Netflix, Inc.* (2008)

10

162 Cal.Ap.4th 43, 58.) Using the Internet's capability in this manner is a sensible and efficient way to provide class notice. Moreover, "[w]e do not look for perfection. '[A] large body of case law reflect[s] the view that "the whole concept of a large class-action might easily be stultified by insistence upon perfection in actual notice to class-members." ' " (*Cellphone*, *supra*, at p. 1392.)

5

Lastly, the absence of evidence the retailers actually displayed the class notices they received does not, by itself, establish the class notice was insufficient. As described above, QuickTrim's noticing program was multifaceted and the record contains substantial evidence the program as a whole achieved its purpose.

II

*Class Settlement*

A

1

Monsalve next contends the trial court erred in approving the settlement because the court had insufficient evidence to independently assess the case's strengths and weaknesses and the settlement does not provide adequate relief to the class. "The trial court has broad discretion to determine whether a class action settlement is fair. It should consider factors such as the strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental

participant; and the reaction of the class members to the proposed settlement. [Citations.] But the 'list of factors is not exclusive and the court is free to engage in a balancing and weighing of factors depending on the circumstances of each case. [Citation.]' [Citation.] In sum, the trial court must determine that the settlement was not the product of fraud, overreaching or collusion, and that the settlement is fair, reasonable and adequate to all concerned. [Citation.]

"The burden is on the proponent of the settlement to show that it is fair and reasonable. [Citation.] However, there is a presumption of fairness when (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the trial court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." (*Reed v. United Teachers Los Angeles* (2012) 208 Cal.App.4th 322, 336-337.)

2

The presumption of fairness applies in this case because the record shows the settlement was reached through arm's length bargaining with the assistance of a respected, retired jurist serving as mediator; class counsel has the requisite experience; and the percentage of objectors was small. The record also shows there was sufficient investigation and discovery to allow counsel and the court to act intelligently.

At base, this case is about whether QuickTrim's labeling and packaging misrepresented its products' efficacy for weight loss. The record before the court at the time it finally approved the settlement included general information about the parties' respective litigation positions, QuickTrim's products, their average cost, and the number

12

of products sold during the class period.  The record also includes examples of the challenged labeling and packaging.  Coupled with Anaya's second amended complaint, this information was sufficient to enable the court to balance the strength of the class claims against the settlement amount offered, and to satisfy itself the settlement amount was "within the 'ballpark' of reasonableness."  (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 130, 133.)  The court was not required to conduct " 'the detailed and thorough investigation that it would undertake if it were actually trying the case.' " (*Id.* at p. 130.)  The court was only required to "receive and consider enough information about the nature and magnitude of the claims being settled, as well as the impediments to recovery, to make an independent assessment of the reasonableness of the terms to which the parties have agreed."  (*Id*. at p. 133.)

Notwithstanding the presumption of fairness, Monsalve contends the settlement is inadequate because its cash value is less than $100,000 and its other components, coupons and injunctive relief, are worthless.  Even if we accept her valuation of the settlement and its components, which Anaya and QuickTrim strongly contest, a settlement is not required to meet a minimum dollar or percentage threshold to be deemed adequate.  Rather, the adequacy of a settlement amount is evaluated in light of litigation uncertainties and class expectations.  Both favor the adequacy of the settlement in this case.

Litigation of the case would be risky and expensive as QuickTrim had multiple viable defenses.  Conversely, the class members' individual damages would be small because of the products' relatively low price points.  No class member opted out of the

13

settlement and only one class member, Monsalve, objected to it, indicating the class as a whole is satisfied with it. In addition, the record belies any assertion coupons formed an excessive part of the settlement as 90 percent of the claimants opted for cash, rather than coupons. Accordingly, we cannot conclude the settlement is outside the ballpark of reasonableness.

B

Relying exclusively on *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134 (*Trotsky*), Monsalve also contends the court abused its discretion in approving the settlement because the settlement included an overly broad release intended to extinguish the *Cowan* action. (See fn. 1, *ante*.) *Trotsky*, however, is factually distinguishable.

In *Trotsky*, the appellate court reversed a judgment approving a class action settlement because the settlement encompassed a class claim not shared by the named plaintiffs nor asserted in the operative class action complaint. (*Trotsky*, *supra*, 48 Cal.App.3d at pp. 145, 153-154.) The apparent purpose of including the claim in the settlement was to foreclose another pending class action. (*Id.* at p. 149.) The appellate court concluded the settlement was invalid as to the claim because the named plaintiffs were not appropriate representatives for the claim. The appellate court additionally concluded a class action settlement may not release a claim beyond the scope of the class action complaint. (*Id.* at pp. 146-147.) The appellate court was also concerned the trial court approved the settlement without full knowledge of the facts because the parties

14

failed to inform the trial court of the other class action before the approval hearing. (*Id.* at pp. 149-150.)

None of these circumstances is present in this case. The operative class complaint encompassed all of the released claims, Monsalve does not assert Anaya is an inadequate representative for the released claims, and the trial court was well-aware of the *Cowan* action before finally approving the settlement. Anaya disclosed the *Cowan* action in her case management statement, which she filed before the court heard her motion for preliminary approval of the settlement. In addition, the preliminary and final approval of the settlement were delayed while Monsalve attempted to remove this case and have it transferred to the federal court handling the *Cowan* action.[2] As *Trotsky*, *supra*, 48 Cal.App.3d 134 has no application here, Monsalve has not established the court abused its discretion by failing to follow *Trotsky* and disapprove the settlement as overly broad.

C

Monsalve further contends the trial court abused its discretion in approving the settlement because it resulted from a reverse auction. A reverse auction occurs when the defendant in a series of class actions chooses to negotiate a settlement with the most ineffectual class lawyers in the hope the trial court will approve a weak settlement that precludes other claims against the defendant. (*Negrete v. Allianz Life Ins. Co.* (9th Cir. 2008) 523 F.3d 1091, 1099.) The settlement of one class action during the pendency of

---

[2] We grant QuickTrim's opposed motion for judicial notice of the federal court records related to the attempted removal and transfer solely for procedural history purposes. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

another parallel class action is not a sufficient basis for concluding a reverse auction took place. (*Id.* at pp. 1099-1100.) Generally, there must be concrete evidence of collusion, such as a bidding war. (*Gallucci v. Gonzales* (9th Cir. Feb. 24, 2015, No. 12-57081) 2015 U.S. App. LEXIS 2949; *Rutter & Wilbanks Corp. v. Shell Oil Co.* (10th Cir. 2002) 314 F.3d 1180, 1189.) There is no concrete evidence of a bidding war or other forms of collusion in this case. To the contrary, the evidence shows the settlement was the product of lengthy negotiations aided by the efforts of a respected, retired jurist serving as a mediator. Accordingly, Monsalve has not established the trial court abused its discretion by failing to disapprove the settlement on this ground.

III

*Attorney Fees Award*

Monsalve contends the trial court abused its discretion in awarding attorney fees and costs of $250,000 because the award is grossly disproportionate to the class's recovery. "Because of the potential for fraud, collusion or unfairness, thorough judicial review of fee applications is required in all class action settlements and the fairness of the fees must be assessed independently of determining the fairness of the substantive settlement terms." (*In re Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 555.) "[T]he ' "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' [Citations.] For this reason '[o]ur review of the amount of attorney fees awarded is deferential.' [Citations.] We apply an abuse of discretion standard. [Citation.] Fees approved by the

16

trial court are presumed to be reasonable, and the objectors must show error in the award." (*Id.* a p. 556.)

" ' " '[T]he primary method for establishing the amount of "reasonable" attorney fees is the lodestar method. The lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.' [Citation.] 'The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.' " ' " (*Consumer Privacy Cases*, *supra*, 175 Cal.App.4th at p. 556.)

In this case, Monsalve does not identify any particular flaw in the trial court's application of the lodestar method. Rather, Monsalve challenges the amount of the attorney fees award because she does not believe class counsel could have worked more than 500 hours on the case based on the results counsel achieved. Notwithstanding Monsalve's skepticism, the record includes declarations from class counsel detailing the time spent and tasks performed by each of counsel's staff members from the inception to the conclusion of the case in the trial court. Monsalve does not point to any deficiencies

17

in any of the declarations and, collectively, they provide substantial evidence to support the amount of the fee award.[3]

Monsalve also challenges the fee award because it was the subject of a " 'clear sailing' " provision in the settlement agreement, under which QuickTrim agreed not to object to an attorney fees award up to $250,000.  (See *Cellphone*, *supra*, 180 Cal.App.4th at p. 1120; *Consumer Privacy Cases*, *supra*, 175 Cal.App.4th at p. 552.)  However, " 'clear sailing' " provisions are common in class action settlement agreements and are not improper under California law.  (*Consumer Privacy Cases*, *supra*, at p. 553.)  Thus, the existence of the "clear sailing" provision in the settlement agreement does not provide a sufficient basis for reversing the attorney fees award.  (See *Cho*, *supra*, 177 Cal.App.4th at p. 744.)

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their appeal costs.

MCCONNELL, P. J.

WE CONCUR:

BENKE, J.

NARES, J.

---

[3]	We need not address Monsalve's alternative arguments regarding the percentage of the benefit method of calculating attorney fees as there was no common fund in this case and the record does not show the trial court used this method.

18