Filed 11/30/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RACHEL MONIZ,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ADECCO USA, INC.,<br><br>        Defendant and<br>Respondent;<br><br><br>PAOLA CORREA et al.,<br><br>Movants and Appellants. | A159410 & A160133<br><br>(San Mateo County<br>Super. Ct. No. 17-CIV-<br>01736) |
| ADECCO USA, INC.,<br><br>        Defendant, Cross-<br>complainant and Appellant,<br><br>v.<br><br>PAOLA CORREA et al.,<br><br>        Cross-defendants and<br>Appellants. | A159978<br><br>(San Mateo County<br>Super. Ct. No. 17-CIV-<br>01736) |

Under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code,[1] § 2698 et seq.), an employee aggrieved by his or her employer's alleged Labor Code violations may be authorized to act as an agent of the Labor Workforce and Development Agency (LWDA) to bring a civil action to recover civil penalties.  If an

_____

        [1] Unless otherwise specified, subsequent statutory references are to the Labor Code.

1

aggrieved employee settles such an action, the trial court must review and approve the settlement, and the civil penalties are distributed 75 percent to the LWDA and 25 percent to the aggrieved employees. (§ 2699, subds. (i), (*l*)(2).)

In separate PAGA representative actions, Rachel Moniz and Paola Correa sued respondent Adecco to recover civil penalties for Adecco's alleged violations of the Labor Code. Moniz settled her case first, and the trial court approved the settlement. In this current set of consolidated appeals, Correa attacks many aspects of the settlement process and approval, including the manner in which the trial court treated objections to the settlement by Correa and the LWDA, the standard used by the trial court to approve the settlement, numerous alleged legal deficiencies of the settlement, and its overall fairness. She also contests the trial court's ruling denying her attorney fees and an incentive payment.

We find that the trial court applied an appropriate standard of review by inquiring whether the settlement was "fair, adequate, and reasonable" as well as meaningful and consistent with the purposes of PAGA, and we reject many of Correa's contentions regarding the settlement's purported substantive and procedural deficiencies. Nonetheless, we reverse the judgment because we cannot infer from the record that the trial court assessed the fairness of the settlement's allocation of civil penalties between the affected aggrieved employees or whether such allocation comports with PAGA.

## BACKGROUND

### I. The Parties

Defendant Adecco is a staffing firm that supplies temporary labor to a variety of companies. Adecco hires temporary employees called "Associates" and full-time employees called "Colleagues." Moniz was a Colleague who managed Adecco's relationship with Google, and Correa was an Associate assigned to work at Google. Moniz worked for Adecco until spring of 2016, and Correa worked for Adecco until December 2016.

### II. Doe and Moniz

In December 2016, John Doe filed a PAGA complaint against Google in San Francisco Superior Court (*Doe, et al. v. Google, et al.* (Super Ct. S.F. City & County, 2016, No. CGC-16-556034) (*Doe*)). He alleged that Google's non-disclosure agreements, policies, and practices violated numerous provisions of the California Labor and Business and Professions Codes.

On February 1, 2017, Moniz filed a PAGA notice with the LWDA alleging that Adecco maintained and implemented unlawful limitations on the disclosure of information in violation of the Labor Code. For example, she stated that Adecco impermissibly required her to agree to several illegal terms in Adecco's "Employment Agreement for Colleagues in California." Moniz's PAGA notice stated that she intended to file a complaint against Adecco on behalf of "all current and former employees, including but not limited to 'Colleagues,' who worked for Adecco in California."

3

On February 14, 2017, Correa submitted to the LWDA a PAGA notice alleging, among other things, that Adecco's non-disclosure agreements, policies, and practices violated sections 96, subdivision (k) (96(k)), 98.6, 232, 232.5, 432.5, 1102.5, and 1197.5, subdivision (k) (1197.5(k)). Correa's PAGA notice incorporated the facts alleged in *Doe*. In March 2017, John Doe added Correa as a plaintiff and added Adecco as a defendant in *Doe*. The *Doe* plaintiffs alleged that the defendants' confidentiality rules prevent employees from engaging in lawful conduct during non-work hours and violated state statutes entitling employees to disclose wages, working conditions, and illegal conduct, including sections 96(k), 98.6, 232, 232.5, 1102.5, and 1197.5(k).

Moniz filed her PAGA representative action in San Mateo County Superior Court in April of 2017 (*Moniz v. Adecco USA, Inc. (*Super Ct. San Mateo County, 2017, No. 17-CIV-01736) (*Moniz*)). She alleged that Adecco violated sections 232, 232.5, 432.5, and 1102.5, and 1197.5(k) by requiring employees to sign a form employment agreement that prohibited disclosure of wages, working conditions, and non-public information of commercial value. The following month, Moniz served Correa with a notice of related case stating that *Moniz* and *Doe* "involve[d] the same parties and [are] based on the same or similar claims," and arose "from the same or substantially identical transactions."

In both *Doe* and *Moniz*, Adecco demurred on the basis that all the plaintiffs' claims were subject to federal "*Garmon* preemption." (*San Diego Unions v. Garmon* (1959) 359 U.S. 236.)

4

The San Francisco Superior Court sustained the demurrers before it and ruled that nearly all the plaintiffs' claims were subject to *Garmon* preemption. The *Doe* plaintiffs appealed from the subsequent judgment.[2] Meanwhile, the court in *Moniz* overruled Adecco's demurrer.

While the *Doe* appeal was pending, Correa sought to intervene in *Moniz*.[3] She argued that she was entitled to mandatory intervention because she had an interest relating to the property or transaction at issue, because the eventual disposition in *Moniz* could impair her ability to protect that interest, and because Moniz did not adequately represent that interest. The trial court denied Correa's motion on timeliness grounds and because she did not meet the requirements for mandatory or permissive intervention. This court affirmed the trial court's denial order, holding that Correa had not established she was entitled to mandatory intervention because she did not

---

[2] In September 2020, this court reversed the trial court's ruling in *Doe* and remanded the case for further proceedings. (*Doe v. Google* (2020) 54 Cal.App.5th 948, 952.) In this appeal, Correa filed a request for judicial notice of a joint case management statement submitted in *Doe* after our remand. She filed an additional request for judicial notice of a September 2021 LWDA email stating that the LWDA stands by its arguments below but will not file anything in this appeal. We deny both requests as irrelevant to our disposition.

[3] Adecco filed a petition for coordination of *Doe* and *Moniz*, which was denied before Correa sought to intervene in *Moniz*. The coordination petition was denied because, at that time it was ruled upon, the trial court in *Doe* had sustained Google's and Adecco's demurrers, and the only cause of action left in *Doe* was not being pursued in *Moniz*.

establish the inadequacy of Moniz's representation. (*Moniz v. Adecco USA, Inc.* (February 11, 2020, A155474) [nonpub. opn.] (*Moniz I*).) We also affirmed the denial of her request for permissive intervention because the trial court did not abuse its discretion in finding that the interests opposing intervention outweighed Correa's alleged interest in the action.

Meanwhile, in the trial court, Moniz and Adecco disputed whether Moniz's PAGA notice and complaint encompassed claims relating to employment agreements signed by both Colleagues and Associates, and Adecco sought to limit the scope of *Moniz* to claims for civil penalties for alleged violations of sections 232, 232.5, 432.5, 1102.5, and 1197.5(k) committed against Colleagues who signed the same employment agreement that Moniz signed.[4] The parties stipulated that these issues could be resolved through motions for summary adjudication (Code of Civ. Proc., § 437c, subdivision (t)). On Moniz's motion for summary adjudication, characterizing the "issue presented" to be "the scope of the representative action," the trial court ruled that Moniz adequately exhausted her administrative prerequisites to pursue PAGA claims on behalf of Adecco Colleagues and Associates "for the time period February 1, 2016 to the present for alleged violations of Labor Code Sections 232, 1197.5(k), 232.5, 1102.5, and 432.5." The trial court denied Adecco's motion seeking to establish that "[t]he scope of 'aggrieved persons' in Plaintiff's

---

[4] The trial court and the parties referred to this debate regarding whether *Moniz* covered alleged violations as to both Colleagues and Associates as the "scope issue."

6

Private Attorneys General Act claims (First through Fifth Causes of Action) is limited to Adecco Colleagues who signed the same Employment Agreement for Colleagues in California as that executed by Ms. Moniz." After this ruling, the parties conducted additional discovery regarding Associates.

III.    The *Moniz* Settlement Approval

On or around May 13, 2019, after two mediation sessions with an experienced mediator, the *Moniz* parties moved for approval of a settlement agreement they reached through mediation. The trial court held a hearing and declined settlement approval, finding that the agreed-upon release was too broad because it included a release of aggrieved employees' non-PAGA claims, including claims under Business & Professions Code section 17200 and federal law. The court required the parties to submit information regarding their costs and fees, and it set a further approval hearing.

On June 3, 2019, the parties executed a settlement agreement with a narrowed release. On July 3, 2019, after an additional hearing, the trial court approved the settlement and entered judgment. Thereafter, the LWDA moved ex parte to intervene, objecting to the settlement and seeking to vacate the judgment because, among other things, the final settlement had not been timely served on the LWDA. At an ex parte hearing, the LWDA informed the trial court that it did not want to intervene or take over prosecution of the case, but it desired to present a postjudgment motion to vacate. Correa also filed a postjudgment motion to vacate the judgment. After a hearing, the trial court

7

vacated the judgment because timely notice of the settlement had not been provided to the LWDA.

On September 6, 2019, Moniz filed a renewed motion to approve the settlement, which Adecco joined. The LWDA filed comments and objections to the settlement on the following grounds: (1) the settlement release was overbroad to the extent that it included claims not listed in Moniz's PAGA notice (the LWDA did not take issue with the trial court's ruling that Moniz had provided sufficient notice to pursue alleged violations of sections 232, 232.5, 432.5, 1102.5, and 1197.5(k) with respect to Associates); and (2) the settlement agreement could not release claims of aggrieved employees, and it should not say that the LWDA, as opposed to Moniz on behalf of the LWDA, was releasing claims. Correa filed an opposition to the motion for approval and objections to the settlement, as well as a motion for attorney fees and costs for herself should the settlement be approved. Her counsel moved to intervene for purposes of seeking attorney fees.

On October 16, 2019, the court held a settlement approval hearing. The LWDA appeared and argued. The trial court received Correa's written opposition and objection, but it denied her oral argument on the question of settlement approval.

On November 22, 2019, the trial court issued an order approving the settlement. The court recounted the following key settlement terms: The settlement was for a non-reversionary $4.5 million in civil penalties. The settlement was for alleged violations against aggrieved employees, called the "PAGA

Settlement Members," defined as "current and former employees of Defendant who worked as an Associate or Colleague in California at any point during" the period February 1, 2016 to the date of final approval.  There were approximately 62,000 such aggrieved employees.  Adecco agreed to "revise its Colleague Agreement and Associate Agreement and related policies which allegedly limit employees from disclosing their own salary, wages, benefits and related working conditions; and/or from discussing [the] same with others; and/or from engaging in whistleblowing activity."  The net proceeds of the settlement were allocated 75 percent to the LWDA and 25 percent to the aggrieved employees.  Of that 25 percent, 88 percent was allocated to the Associates and 12 percent was allocated to the Colleagues.

Adecco received the following release:  "[T]he LWDA and PAGA Settlement Members release any and all known and unknown claims under the PAGA against the Released Parties that were or could have been pled based on the factual allegations of the Complaint, including but not limited to Plaintiff's allegation that Defendant unlawfully prohibited current and former employees from: (1) disclosing certain information including but not limited to salary, benefits, wages, identities of other employees, training and operations methods, and office protocols and systems and programs and systems; (2) discussing the wages of others, engaging in whistleblower activity, or disclosing or discussing their working conditions. This includes, but is not limited to, PAGA claims for violation of

9

California Labor Code sections 232, 232.5, 432.5, 1102.5, 1197.5(k), and 2699 et seq.[ ]  For avoidance of doubt, the only claims being released by the LWDA and PAGA Settlement Members are claims that were or could have been brought under the PAGA, based on the allegations in Plaintiff's Complaint."

The settlement release included a waiver of rights under Civil Code section 1542, as follows:  "The PAGA Settlement Members' Released Claims include all such respective claims, whether known or unknown by the releasing party.  Thus, even if a PAGA Settlement Member (including Plaintiff) discovers facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the PAGA Settlement Members' Released Claims, e.g. the claims brought in Plaintiff's Complaint or that could have been brought based on the facts therein, those claims will remain released and forever barred.  Therefore, with respect to those respective released claims, Plaintiff and the PAGA Settlement Members expressly waive and relinquish the provisions, rights and benefits of California Civil Code section 1542 . . . ."  Moniz also individually released Adecco from all claims under Business and Professions Code section 17200, section 1833 of title 18 of the United States Code, and section 240.21F of title 17 of the Code of Federal Regulations.

The trial court acknowledged the lack of binding authority providing a standard by which a PAGA settlement should be reviewed, and applied the "fair, reasonable, and adequate" standard applicable to "analogous class actions."  The court also

10

stated that no binding authority required it to apply the standard the LWDA advocated—that a trial court must closely scrutinize a PAGA settlement and find it "meaningful, and consistent with the underlying purposes of the statute to benefit the public." Nonetheless, the trial court applied that standard and engaged in its own analysis of the settlement's fairness. It found, "The . . . proposed $4.5 million settlement of PAGA civil penalties for violations of the Labor Code . . . is fair, reasonable, and adequate. Even if the 'standard' asserted by LWDA is applied, the Court finds that the $4.5 million Settlement, which includes a change of policy by Adecco in the language of its employment agreements to directly address the concerns raised by this lawsuit, is 'meaningful, and consistent with the underlying purpose of the statute to benefit the public.' [¶] This Court finds that this Settlement is consistent with the stated purpose of PAGA that 'the vigorous assessment and collection of civil penalties as provided in the Labor Code' is the 'meaningful deterrent to unlawful conduct'. (Legislative History of PAGA, Section 1 of Stats. 2003 c[h]. 906 . . . .)"

In January 2020, the trial court approved up to $78,000 for payment of costs, fees, and expenses to the settlement administrator, $32,000 for Moniz's costs, a $12,000 additional fee for Moniz's release and service as plaintiff, and $1.5 million for Moniz's attorney fees. The court denied Correa's counsel's motion to intervene, as well as Correa's request for attorney fees and an incentive payment. Correa filed a notice of appeal from the

11

November 22, 2019 order and the January 15, 2020 order (appeal No. A159410).[5]

On February 10, 2020, the trial court entered judgment. Correa moved for a new trial under Code of Civil Procedure sections 657 and 659 and to vacate the judgment under Code of Civil Procedure sections 663 and 473, subdivision (d). The trial court denied these requests without a hearing. On April 3, 2020, Correa filed a notice of appeal listing the February 10, 2020 judgment (appeal No. A159978). On April 17, 2020, Correa filed a notice of appeal from the order denying her posttrial motions (appeal No. A160133). This court consolidated the three appeals.

## DISCUSSION

Adecco raises certain procedural challenges to Correa's appeals, which we address before turning to Correa's substantive challenges.

### I.  Procedural Challenges

Adecco urges dismissal on three procedural grounds. First, Adecco asserts that Correa's appeal of the November 22, 2019 order and the January 2020 order (appeal No. A159410) should be dismissed because these prejudgment orders were not appealable. Second, Adecco argues that Correa was not a party to *Moniz,* so she lacks standing to appeal the judgment and the prejudgment orders (appeal Nos. A159410 and A159978). Third, Adecco asks us to find that Moniz forfeited her appeal by failing

---

[5] On March 9, 2020, this court summarily denied Adecco's motion to dismiss the appeal on the basis that those orders were non-appealable.

12

to adequately brief her arguments.  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 ["The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived"].)  For the reasons set forth below, we reject Adecco's procedural challenges.

"The existence of an appealable judgment is a jurisdictional prerequisite to an appeal."  (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.) "A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment."  (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.)  Correa does not dispute Adecco's claims regarding the non-appealable nature of the orders at issue in appeal No. A159410, instead arguing that she can challenge these orders via her later appeal from the judgment (appeal No. A159978).  Adecco, in turn, does not dispute the validity of Correa's notices of appeal from the judgment or the postjudgment orders.  Thus, we have appellate jurisdiction over this matter by virtue of Correa's second and third notices of appeal.[6]

To have standing to appeal a judgment, an appellant must be a party of record and aggrieved by the challenged judgment or order.  (Code Civ. Proc., § 902; *County of Alameda v. Carleson*

---

[6] In these circumstances, we dismiss appeal No. 159410 as an appeal from non-appealable orders.  There is no need to treat that notice of appeal as premature but valid (*Vienna v. California Horse Racing Bd.* (1982) 133 Cal.App.3d 387, 389, fn. 2) because Correa filed a timely notice of appeal (A159978) after the entry of judgment.  Even if the notice of appeal in appeal No. A159410 was valid, the resolution of the issues in appeal No. A159978 and appeal No. A160133 render it moot.

13

(1971) 5 Cal.3d 730, 736 (*Carleson*).)  A judgment aggrieves a person if it has an " ' "immediate, pecuniary, and substantial" ' " injurious effect on the person's rights or interests.  (*Carleson*, at p. 737.)  We liberally construe standing and resolve doubts in favor of the right to appeal.  (E.g., *Vitatech Internat., Inc. v. Sporn* (2017) 16 Cal.App.5th 796, 804.)

Adecco's argument that Correa lacks standing to challenge the judgment because she is a nonparty is not well-taken.  For purposes of appellate standing, an unnamed party may become a party to an action through intervention (Code Civ. Proc., § 387) or by filing an appealable motion to set aside and vacate the judgment.  (*Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 267 [discussing motion under Code of Civil Procedure section 663]; *Carleson*, *supra*, 5 Cal.3d at p. 736 [same]; see *In re Marriage of Burwell* (2013) 221 Cal.App.4th 1, 13–14 [addressing a motion for a new trial under Code of Civil Procedure section 657 and interpreting the *Carleson* rule to apply to any motion to vacate or set aside judgment].)  Where a postjudgment motion to vacate is denied, the moving party may appeal from that denial and challenge the underlying judgment.  (*Hernandez*, at p. 273 ["Had [nonparty] Muller properly intervened in the class action or filed a section 663 motion to vacate the judgment, and been denied relief, she would have had a clear path to challenge the attorney fees award (or settlement or judgment) on appeal"].)  Correa filed a motion under Code of Civil Procedure sections 663 and 657.  As such, the "party of

14

record" requirement does not prevent Correa from challenging the judgment.[7]

Although respondents do not argue in their briefing that Correa lacks standing to appeal because she is not "aggrieved" by the judgment confirming the settlement, we address this issue because a party must be aggrieved to appeal.  (Code Civ. Proc., § 902; *Carleson, supra,* 5 Cal.3d at p. 736.)

Recently, our colleagues in the Second District held that a PAGA representative in one action does not have standing to move to vacate a judgment following a settlement of another PAGA action with overlapping PAGA claims or to appeal that judgment.  (*Turrieta v. Lyft, Inc.* (2021) 69 Cal.App.5th 955, 967– 968 (*Turrieta*).)  In *Turrieta*, appellants and Turrieta filed separate PAGA representative actions alleging that Lyft misclassified its drivers as independent contractors, thereby violating multiple provisions of the Labor Code.  (*Id.* at p. 962.) Turrieta settled her lawsuit with Lyft first, and appellants moved to intervene, moved to vacate the judgment entered after the court approved the settlement, and appealed the judgment.  (*Id.* at pp. 964–967.)  Turrieta and Lyft challenged appellants' standing to appeal (Code Civ. Proc., § 902).  (*Id.* at p. 970.) Appellants countered that they were aggrieved as PAGA representatives because the settlement had an "immediate, pecuniary, and substantial" effect on the state (and on them as

---

[7] Moniz makes the additional argument that Correa lacks standing to challenge the trial court's favorable ruling on summary adjudication.  We address this argument in Section III(C)(1)(b) of our Discussion, *post*.

proxies for the state) by extinguishing the claims they were deputized to pursue for less than pennies on the dollar, and further asserted that they had an interest " 'in representing the State's interest' " in " 'achieving the maximum recovery possible for Lyft's misdeeds,' and deterring future violations." (*Id.* p. 971.) Appellants additionally argued that they were aggrieved as nonparty employees who would be bound by the judgment. (*Id.* at p. 973.)

The appellate court rejected the *Turrieta* appellants' claim that they were aggrieved as nonparty employees, observing that a PAGA judgment does not extinguish individual claims of nonparty employees. (*Turrieta*, *supra*, 69 Cal.App.5th at pp. 973–974.) The court also found that they were not aggrieved because they, as PAGA representatives, did not possess a personal interest in the settlement of another PAGA claim. (*Id.* at p. 971.) "Because it is the state's rights, and not appellants', that are affected by a parallel PAGA settlement, appellants are not aggrieved parties with standing to seek to vacate the judgment or appeal. Nor can appellants claim a pecuniary interest in the penalties at issue, as the 'civil penalties recovered on the state's behalf are intended to "remediate present violations and deter future ones," not to redress employees' injuries.' " (*Id.* at p. 972.)

We disagree with *Turrieta*'s conclusion that status as a PAGA plaintiff in one action is insufficient to confer standing on that PAGA plaintiff to appeal a judgment following an allegedly unfair settlement in another PAGA action with overlapping

16

claims.[8]  While the *Turrieta* appellants indisputably did not own a personal claim for PAGA civil penalties (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 547, fn. 4 (*Williams*)), *Turrieta* appears to have discounted their role as designated proxies of the state.  The *Turrieta* appellants, like Correa, were deputized under PAGA to prosecute their employer's Labor Code violations on behalf of the state.  Accepting the premise that PAGA allows concurrent PAGA suits as *Turrieta* did (*Turrieta, supra,* 69 Cal.App.5th at p. 969),[9] where two PAGA actions involve overlapping PAGA claims and a settlement of one is purportedly unfair, it follows that the PAGA representative in the separate action may seek to become a party to the settling action and

_____

[8] *Uribe v. Crown Building Maintenance Co.* (2021) 70 Cal.App.5th 986, 992 (*Uribe*), addressed a similar standing issue and held that Garibay, the appellant and intervenor who had also initiated a separate PAGA lawsuit, had standing as an aggrieved party to appeal a judgment entered after respondents reached a settlement in *Uribe* and the settlement resolved a PAGA claim similar to the one Garibay alleged in her complaint in intervention.  "Garibay has standing to appeal because, having intervened and yet unable to opt out of the other parties' settlement of Uribe's PAGA claim, Garibay's PAGA cause of action in this same lawsuit was resolved against her by the trial court's entry of judgment on its final approval of the settlement.  She is therefore a party 'aggrieved' by the judgment.  As one court has explained, the 'prejudice' giving rise to standing arises when ' "the settlement strips the party of a legal claim or cause of action." ' "  (*Id.* at p. 1001.)  The court distinguished *Turrieta* because Garibay asserted a PAGA claim in the settling lawsuit and the trial court's decision to maintain Garibay as an intervenor in that lawsuit had gone unchallenged.  (*Id.* at p. 1002.)

[9] No party in this litigation challenges this premise.

17

appeal the fairness of the settlement as part of his or her role as an effective advocate for the state. Correa has done just this. Thus, she represents interests that are sufficiently aggrieved to satisfy Code of Civil Procedure section 902, a remedial statute to be liberally construed in favor of the right to appeal.[10] (*Vitatech Internat., Inc.*, *supra*, 16 Cal.App.5th at p. 804.)

Finally, we decline Adecco's invitation to resolve the appeal of the trial court's postjudgment orders on forfeiture grounds. Correa sets forth her arguments regarding legal error, abuse of discretion, and the erroneous judgment in light of the facts in a manner sufficient to preserve her right to appeal.

## II. PAGA Overview

Before addressing Correa's substantive challenges, we begin with a brief discussion of PAGA. "In September 2003, the Legislature enacted [PAGA] (Lab. Code, § 2698 et seq.; Stats. 2003, ch. 906, § 2, eff. Jan. 1, 2004). The Legislature declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to

---

[10] Moniz asserts that this court previously affirmed a finding that Correa did not have an interest in this case sufficient to warrant intervention. That is not accurate: This court affirmed the denial of Correa's motion to intervene, but in so doing, we assumed without deciding that she had an interest sufficient for intervention. There is thus no tension between *Moniz I* and our conclusion here that Correa is sufficiently aggrieved to challenge the judgment approving the settlement.

18

allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts.  (Stats. 2003, ch. 906, § 1.)" (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980 (*Arias*).)

"A PAGA claim is legally and conceptually different from an employee's own suit for damages and statutory penalties." (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81 (*Kim*).)  An aggrieved employee suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." (*Arias*, *supra*, 46 Cal.4th at p. 986.)  Every PAGA action is "a dispute between an employer and the *state*."  (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 386 (*Iskanian*).)

In a PAGA lawsuit, "the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the [LWDA]."  (*Arias*, *supra*, 46 Cal.4th at p. 986.)  Thus, the civil penalties a PAGA plaintiff may recover on the state's behalf are distinct from the statutory damages or penalties that may be available to employees suing for individual violations.  (*Iskanian*, *supra*, 59 Cal.4th 348 at p. 381.)  An action under PAGA " 'is fundamentally a law enforcement action' " and relief is " 'designed to protect the public and not to benefit private parties.' "  (*Arias*, at p. 986.)  "A PAGA representative action is

19

therefore a type of qui tam action," conforming to all "traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation." (*Iskanian*, at p. 382.) The "government entity on whose behalf the plaintiff files suit is always the real party in interest." (*Ibid.*)

Only an "aggrieved employee" has standing to bring a civil action under PAGA. (§ 2699, subd. (a).) An "aggrieved employee" is "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (§ 2699, subd. (c).) Before suing, however, "[a]s a condition of suit," the aggrieved employee "must provide notice to the employer and the [LWDA] 'of the specific provisions of [the Labor Code] alleged to have been violated, including the facts and theories to support the alleged violation.' [Citations.] If the agency elects not to investigate, or investigates without issuing a citation, the employee may then bring a PAGA action." (*Williams, supra,* 3 Cal.5th at p. 545.) Once the procedural prerequisites are met, the aggrieved employee can bring a PAGA action. (See §§ 2699, subd. (a), 2699.3.)

## III. Substantive Challenges

In this appeal, Correa argues that the trial court improperly dealt with the objections to the settlement; the settlement was beyond the trial court's authority; the settlement should not have been approved because there was no meeting of the minds; the trial court used the wrong standard to approve the settlement; the trial court abused its discretion in finding the

settlement amount and allocation was fair; and the trial court ignored evidence of collusion. Correa additionally complains that the trial court erred in denying her request for attorney fees and an incentive payment. We address certain of her challenges below, starting with the standard of review.

## A. *Trial Court and Appellate Standard of Review*

This appeal raises what federal district courts have referred to as the "vexing" question of what standard a trial court should use to review a PAGA settlement. (*Flores v. Starwood Hotels & Resorts Worldwide* (C.D. Cal. 2017) 253 F.Supp.3d 1074, 1075.) Aside from the requirement that the court "review and approve" a settlement in a civil action filed under PAGA (§ 2699, subd. (*l*)(2)), PAGA itself does not provide a standard for this review and approval in the majority of PAGA cases. (See *Flores*, at p. 1075 ["[PAGA] is surprisingly short on specifics"].) Further, neither the Legislature, nor any published California authority has provided a definitive answer to this question. (*Ibid*.) We do so now.

Correa contends that, in approving a PAGA settlement, the trial court acts as a fiduciary to absent parties and must closely scrutinize the settlement to determine whether it is fair, genuine, meaningful, and consistent with the underlying purposes of PAGA. Although the LWDA did not suggest the trial court acted as a fiduciary, it argued below that the same settlement approval standard should be applied. While Correa maintains that the trial court failed to apply the standard urged, Adecco correctly points out that the trial court in fact applied that standard,

21

finding that the "non-reversionary [s]ettlement of $4.5 million is fair, adequate, [and] reasonable," as well as "meaningful[] and consistent with the underlying purpose of the statute to benefit the public." The court further found that the settlement "advances the purposes of the Labor Code." We conclude the trial court used the appropriate standard.

As the trial court did in part here, many federal district courts have applied the "fair, reasonable, and adequate" standard from class action cases to evaluate PAGA settlements. (*Chamberlain v. Baker Hughes, a GE Co., LLC* (E.D. Cal. July 29, 2020, No. 1:19-cv-00831-DAD-JLT) 2020 U.S. Dist. Lexis 134582 at \*10–\*11; *Rincon v. West Coast Tomato Growers, LLC* (S.D. Cal. Feb. 12, 2018, No. 13-CV-2473-JLS) 2018 U.S. Dist. Lexis 22886 at \*6.) In class actions, courts have a fiduciary duty to protect the interests of absent class members, whose individual claims will be discharged. (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129.) The requirement of court approval serves to prevent fraud, collusion, unfairness, and to protect unnamed class members "whose rights may not have been given due regard by the negotiating parties." (*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1800–1801 (*Dunk*).) In this role, the trial court conducts an "independent assessment of the adequacy of the settlement terms," which requires that the court have before it a record from which it can discern sufficient information about the amount in controversy and the realistic range of outcomes. (*Kullar*, at pp. 120, 132; *Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal.App.4th 399, 409.) The

court is vested with a broad discretion in making its determination, and it may consider a number of non-exhaustive factors in its analysis, including "the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." (*Dunk*, at p. 1801.)

Despite the fact that " 'a representative action under PAGA is not a class action' " (*Kim*, *supra*, 9 Cal.5th at p. 87), and is instead a "type of qui tam action" (*Iskanian*, *supra*, 59 Cal.4th at p. 382), a standard requiring the trial court to determine independently whether a PAGA settlement is fair and reasonable is appropriate. Class actions and PAGA representative actions have many differences, with one salient difference being that certain due process protections afforded to unnamed class members are not part of PAGA litigation because aggrieved employees do not own personal claims for PAGA civil penalties. (*Williams*, *supra*, 3 Cal.5th at p. 547, fn. 4; see *Kim*, at p. 87.) Nonetheless, the trial court must "review and approve" a PAGA settlement (§ 2699, subd. (*l*)(2)), and the Supreme Court has in dictum referred to this review as a "safeguard[ ]." (*Kim*, at p. 88.) The Supreme Court has also observed that trial court approval "ensur[es] that any negotiated resolution is fair to those affected." (*Williams*, at p. 549; see *Amaro v. Anaheim Arena Management,*

*LLC* (2021) 69 Cal.App.5th 521, 542–543 [reviewing PAGA portion of class action settlement to determine its fairness].) When trial court approval is required for certain settlements in other qui tam actions in this state, the statutory standard is whether the settlement is "fair, adequate, and reasonable under all the circumstances." (Gov. Code, § 12652, subd. (e)(2)(B) [standard for approval of government settlement over qui tam plaintiff's objection]; see Ins. Code, § 1871.7, subd. (f)(2)(B) [same under Insurance Fraud Prevention Act].) Thus, while PAGA does not require the trial court to act as a fiduciary for aggrieved employees, adoption of a standard of review for settlements that prevents " ' " 'fraud, collusion or unfairness' " ' " (*Dunk*, *supra*, 48 Cal.App.4th at pp. 1800–1801), and protects the interests of the public and the LWDA in the enforcement of state labor laws is warranted. Because many of the factors used to evaluate class action settlements bear on a settlement's fairness—including the strength of the plaintiff's case, the risk, the stage of the proceeding, the complexity and likely duration of further litigation, and the settlement amount—these factors can be useful in evaluating the fairness of a PAGA settlement.

Given PAGA's purpose to protect the public interest, we also agree with the LWDA and federal district courts that have found it appropriate to review a PAGA settlement to ascertain whether a settlement is fair in view of PAGA's purposes and policies. (*O'Connor v. Uber Technologies, Inc.* (N.D. Cal. 2016) 201 F.Supp.3d 1110, 1132–1134; *Jordan v. NCI Group, Inc.* (Jan. 5, 2018, No. EDCV 16-1701-JVS) 2018 U.S. Dist. Lexis 25297, at

24

*3–*4; *Chamberlain v. Baker Hughes, a GE Co., LLC, supra*, 2020 U.S. Dist. Lexis 134582 at *10–*11; see *Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America* (2006) 141 Cal.App.4th 46, 59, 61–62 [where the Legislature required court approval of private settlements of Proposition 65 actions brought to vindicate the public interest, court must evaluate the resulting consent decree to determine if it is "just" and "serves the public interest"].)[11]  We therefore hold that a trial court should evaluate a PAGA settlement to determine whether it is fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws.  (See *Williams*, *supra*, 3 Cal.5th at p. 546 [PAGA "sought to remediate present violations and deter future ones"]; *Arias*, *supra*, 46 Cal.4th at p. 980 [the declared purpose of PAGA was to augment state

---

[11] *Kintetsu* declined to expressly read a "fair, reasonable, and adequate" class action standard into Health & Safety Code section 25249.7, subdivision (f)(4), which sets forth three requirements for approving a Proposition 65 (Health & Safe. Code, § 25249.5 et seq.) settlement.  But the court adopted what it called a "similar" standard, and, in doing so, it cited with approval the standard used to review certain federal environmental consent judgments.  ( *Kintetsu*, *supra*, 141 Cal.App.4th at pp. 61–62 & fn. 11; see *U.S. v. Southeastern Penn. Transp. Authority* (3d Cir. 2000) 235 F.3d 817, 823 [CERCLA consent decree must be "fair, reasonable, and consistent with CERCLA's goals"]; *U.S. v. Akzo Coatings of America, Inc.* (6th Cir. 1991) 949 F.2d 1409, 1435 [CERCLA consent decree must be "fair, reasonable and adequate" and " 'consistent with the purposes that CERCLA is intended to serve' "].)

enforcement efforts to achieve maximum compliance with labor laws].)  The trial court below used this standard.

There is also no established appellate standard of review for a PAGA settlement, but the parties agree that this court should apply an abuse of discretion standard.  Given the lack of express statutory standard or criteria for approving PAGA settlements, and the obvious discretion a trial court must exercise in determining the settlement's fairness, we find this standard to be appropriate.  Under this standard of review, we determine only whether the trial court acted within its broad discretion in approving the settlement.  (See *Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles, supra*, 186 Cal.App.4th at p. 407.)  We review the trial court's findings of fact for substantial evidence and its conclusions of law de novo.  (*Cellphone Termination Fee Cases* (2009) 180 Cal.App.4th 1110, 1118.)

## B.  The Trial Court's Treatment of Settlement Objections

Once an aggrieved employee files a PAGA lawsuit, the statutory scheme recognizes that the employee may settle that lawsuit on behalf of the state.  (§ 2699, subds. (a) & (*l*)(2).)  In those circumstances, the trial court must approve the settlement and the "proposed settlement shall be submitted to the [LWDA] at the same time that it is submitted to the court."  (§ 2699, subd. (*l*)(2).)  Despite the brevity of this statutory language, Correa claims that, when approving a PAGA settlement, the trial court is also required to: 1) hear from the LWDA and give the LWDA's comments "deference, weight, and respect," and 2) entertain objections from aggrieved employees pursuing similar PAGA

representative actions. She asserts that the trial court erred in failing to do either.

Addressing Correa's first contention, the trial court did not err in its treatment of the LWDA's comments. Correa relies on authority espousing the general rule of administrative law that an agency's interpretation of a statute is entitled to "consideration and respect." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 (*Yamaha*).) Adecco responds that, in contrast to statutory language stating that the Division of Occupational Health and Safety can comment on a settlement and requiring the court to give these comments "appropriate weight" in PAGA suits alleging OSHA violations (§ 2699.3, subd. (b)(4)), the language governing other PAGA settlements does not afford the LWDA the right to comment. Adecco also argues that there would be no reversible error in any event because the trial court heard and considered the LWDA's objections. We agree with Adecco's second assertion and do not address its first. Here, the LWDA's objection to the scope of release hinged largely on legal interpretation of PAGA and its administrative notice requirements. Heeding the command that statutory interpretation is ultimately the responsibility of the judicial branch (*Yamaha, supra,* 19 Cal.4th at pp. 7–8), the trial court disagreed with the LWDA's interpretation, but it heard and considered the LWDA's position.[12]

---

[12] We address the correctness of this interpretation, *post,* although Correa does not argue that the language of the settlement must be styled such that Moniz released claims on

Next, PAGA does not provide that aggrieved employees must be heard on the approval of PAGA settlements. Citing only *Harvey v. Morgan Stanley Smith Barney LLC* (N.D. Cal. Mar. 3, 2020, No. 18-cv-02835-WHO) 2020 U.S. Dist. Lexis 37580, *34–*36, Correa states that courts have "generally allowed and considered settlement objections by PAGA agents." However, as Adecco points out, Correa concedes that PAGA provides no mechanism for aggrieved employees, including those pursuing PAGA lawsuits, to be heard in objection to another PAGA settlement. This concession is dispositive, and we will not read a requirement into a statute that does not appear therein. (See, e.g., *Scottsdale Indemnity Co. v. National Continental Ins. Co.* (2014) 229 Cal.App.4th 1166, 1172 [in construing statutes, courts generally will not add words to the statutory language].) That the federal district court in *Harvey* opted to consider the objections made by another PAGA plaintiff (while at the same time recognizing she had no statutory right to object) does not change this. (*Harvey*, at *31–*34.)

Correa advances numerous policy considerations for why PAGA representative plaintiffs from other cases should be heard on PAGA settlements, including that such participation would help prevent reverse auctions and would promote the fairness of PAGA settlements. Although PAGA does not contain an express statutory mechanism for aggrieved employees pursuing representative actions to object to a separate PAGA settlement,

---

behalf of the LWDA, and the LWDA did not appeal. We accordingly do not address this LWDA objection.

28

Adecco does not argue that the trial court lacked inherent power to hear and consider such objections. Given the history of appellate litigation in this case and in *Doe*, and especially since further proceedings will be required, as discussed in Section III.D, *post*, we perceive no reason why the trial court should not hear Correa's objections on remand.[13]

## C. *The Trial Court's Alleged Lack of Authority/Jurisdiction*

### 1. Release of Claims Not Listed in the PAGA Notice

Correa next argues that the settlement is invalid because it encompassed a release of claims that were not listed in Moniz's PAGA notice. Her argument appears to have two components. First, she contends that the trial court incorrectly ruled that Moniz's PAGA notice authorized Moniz to act as the state's agent to seek civil penalties for the specified Labor Code violations with respect to Associates. Second, as did the LWDA did below, Correa contends that because Moniz's PAGA notice necessarily could not have included unknown or unlisted PAGA claims, Moniz was not authorized under PAGA to act as the agent of the state to execute a release of such claims. In other words, Correa contends that a PAGA plaintiff may release only the specific claims listed in his or her PAGA notice as part of a PAGA settlement. After a brief review of PAGA's notice requirements, we address each of these arguments below.

---

[13] We make no observations regarding the propriety of a trial court hearing objections from aggrieved employees who have not brought PAGA representative actions.

### a. *PAGA's Notice Requirement*

"As a condition of suit" under PAGA, an aggrieved employee must provide notice to the employer and the state of the specific provisions of the Labor Code alleged to have been violated, including "the facts and theories to support the alleged violation." (§ 2699.3, subd. (a)(1)(A); see *id*., subd. (c)(1)(A) [same]; *Williams, supra*, 3 Cal.5th at p. 545.) The "evident purpose" of this notice requirement is to afford the LWDA the opportunity to decide whether to allocate scarce resources to an investigation of the violations alleged and to allow the employer to submit a response to the LWDA. (*Williams*, at pp. 545–546.) PAGA's notice requirement demands more than bare allegations of Labor Code violations. (*Brown v. Ralphs Grocery Co.* (2018) 28 Cal.App.5th 824, 836; *Alcantar v. Hobart Service* (2015) 800 F.3d 1047, 1057.) What matters is that the notice provides the LWDA and the employer adequate information about the alleged violations so that each may respond in an informed manner. (*Williams*, at pp. 545–546; *Alcantar*, at p. 1057.)

### b. *Claims for Civil Penalties for Alleged Violations of Sections 232, 232.5, 432.5, 1102.5, and 1197.5(k) Against Associates*

On the question of whether *Moniz* could sue for violations as to both Colleagues and Associates, the trial court analyzed Moniz's PAGA notice and ruled, "Moniz has adequately exhausted her administrative prerequisites to pursue a PAGA claim on behalf of Adecco full-time employees (called Colleagues) and temporary employees (called Associates) for the time period February 1, 2016 to the present for allege[d] violations of Labor Code Sections 232, 1197.5(k), 232.5, 1102.5, and 432.5, based

30

upon . . . Adecco allegedly requiring Colleagues and Associates to agree in writing not to discuss or disclose their working conditions including salary, benefits, and compensation." Correa contests this ruling, ultimately arguing that the settlement is invalid because it resolves PAGA claims for Adecco's alleged violations of sections 232, 232.5, 432.5, 1102.5, and 1197.5(k) with respect to Associates when Moniz's PAGA notice was limited to Colleagues. We find that Correa's challenge to the summary adjudication order fails on procedural and substantive grounds.

As a matter of procedure, Correa does not have standing to challenge the summary adjudication order because it was favorable to the state. (See *Marich v. MGM/UA Telecommunications, Inc. (*2003) 113 Cal.App.4th 415, 431 [appellant could not challenge favorable ruling below].) Correa counters that she can challenge this order on appeal because it "caused the State to be aggrieved, and Correa stands in the State's shoes." But the trial court's ruling allowed for a broader potential recovery of civil penalties for the LWDA. Furthermore, the LWDA—whose interests Correa purports to represent—did not take issue with this ruling, informing the court below, "The -- second of all, the language of the settlement agreement was -- and I appreciate and understand the parties' arguments and the Court pointing out the issue of the colleagues versus the associates. *That's not the issue that's the problem for us.*" (Italics added.) Correa thus lacks standing to challenge the summary adjudication ruling.

Even assuming Correa had standing, her challenge to the court's summary adjudication ruling also fails because the ruling was correct.  Moniz began her PAGA notice by stating that she would file a complaint for all current and former Adecco California employees, "including but not limited to 'Colleagues.' " The basis for the proposed lawsuit was that "Adecco maintained and implemented unlawful limitations on the disclosure of information in violation of, inter alia, the California Labor Code." Specifically set forth as an "example" of the unlawful limitations at issue, Moniz stated that she signed an "Employment Agreement for Colleagues in California," and she believed all Colleagues were required to execute this form contract.  She wrote that this contract contained a non-disclosure provision essentially precluding Colleagues from divulging "confidential information" without Adecco's written consent, including salary and benefits data as well as non-public information and knowledge having "some commercial value."  Moniz then listed the statutes violated by the required execution of the form agreements and explained why they were violated.  She concluded, "The aggrieved employees include all current and former Adecco employees, including but not limited to Colleagues, who are or were subject to the policies set forth above."  Moniz did not mention Associates in her PAGA notice by name, but she clearly set forth her intent to sue on behalf of any Adecco employee subject to unlawful disclosure limitations imposed through Adecco's form employment contracts, of which her form employment agreement was an exemplar.  And, again, the LWDA

did not dispute the scope of Moniz's PAGA notice, indicating that it received notice sufficient under PAGA. The trial court therefore did not err in ruling on summary adjudication that Moniz's PAGA notice covered both Colleagues and Associates.

### c. *Release of Other Claims Not Listed in the PAGA Notice*

Correa next argues, as did the LWDA below, that the settlement release is invalid because Moniz could not release any PAGA claim not listed in her PAGA notice, yet the release covers "all known and unknown claims under PAGA . . . that were or could have been pled based on the allegations of the Complaint." She contends that, because an aggrieved employee must give the LWDA notice before suing, the content of that notice fixes the scope of his or her authority to act for the state and sets an outer limit on the PAGA claims he or she is authorized to release when settling the PAGA representative action. Adecco, on the other hand, defended the validity of release below by representing that it released only PAGA claims that were or could have been pled based on the primary rights at issue in the complaint, and such a release preserved Adecco's res judicata defense.[14] The trial court rejected the LWDA's argument that the settlement release in this case was invalid because it extended beyond claims listed in Moniz's PAGA notice. "The language of the Release itself is designed to specifically be limited to claims available under

---

[14] We express no view as to the validity of Adecco's view that the release merely preserves its res judicata defense. As explained more fully below, issues relating to the application of the res judicata doctrine and substantive reach of the release must be addressed by other courts.

PAGA only, and for such claims that might arise only from the factual allegations made by Plaintiff in this case . . . . As the California Supreme Court held in *Arias*, the aggrieved employees who are not named parties in this case are barred by collateral estoppel or res judicata from filing another PAGA lawsuit arising from these same facts, upon entry of judgment on this Settlement. Accordingly, the Release so providing is consistent with law . . . ."

Although Correa's argument does not lack in superficial appeal, the trial court was correct in finding that the release in this case was not invalid because it purported to include PAGA claims not listed in Moniz's PAGA notice. That the doctrine of res judicata applies to PAGA judgments informs this conclusion. (*Arias*, *supra*, 46 Cal.4th at p. 986 ["with respect to the recovery of civil penalties, nonparty employees as well as the government are bound by the judgment in an action brought under [PAGA]"]; *Robinson v. Southern Counties* (2020) 53 Cal.App.5th 476, 482–483 [claim preclusion prevented second PAGA representative action]; *Magana v. Zara USA, Inc.* (9th Cir. 2021) 856 Fed.Appx. 83, 85–87 [claim preclusion did not bar second PAGA representative suit with claim implicating different primary right].) Res judicata consists of claim and issue preclusion. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*)); *Guerrero v. Department of Corrections & Rehabilitation* (2018) 28 Cal.App.5th 1091, 1098 (*Guerrero*).) Issue preclusion prohibits the relitigation of issues argued and

decided in a prior case.[15]  (*DKN Holdings*, at p. 824.)  Claim preclusion prevents relitigation of the same "cause of action," defined under our primary rights doctrine as "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798.)[16] Claim preclusion extends to claims that were brought or could have been brought.  (*Guerrero*, at p. 1098.)  Taken together, PAGA's statutory scheme and the principles of preclusion allow, or "authorize," a PAGA plaintiff to bind the state to a judgment through litigation that could extinguish PAGA claims that were not specifically listed in the PAGA notice where those claims involve the same primary right litigated.  Because a PAGA plaintiff is authorized to settle a PAGA representative action with court approval (§ 2699, (*l*)(2)), it logically follows that he or she is authorized to bind the state to a settlement releasing claims commensurate with those that would be barred by res judicata in a subsequent suit had the settling suit been litigated to judgment by the state.[17]  Thus, it was reasonable for the trial

---

[15] Issue preclusion applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit, or one in privity with that party." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 825.)

[16] The application of claim preclusion requires (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit.  (*DKN Holdings, supra*, 61 Cal.4th at p. 824.)

[17] We do not rely on what Adecco incorrectly claims are the "binding" decisions in *Villacres v. ABM Indus. Inc.* (2010)

court to reject the LWDA's argument in this case and approve the release language Adecco claimed was designed to "preserve" its res judicata defense.

Correa also relies on *Iskanian* for the proposition that a settlement release must be limited to the claims listed in the PAGA notice because "a PAGA agent cannot waive PAGA claims pre-dispute," but *Iskanian* does not assist Correa. In *Iskanian*, the plaintiffs signed arbitration agreements with PAGA representative action waivers as part of their employment, and their employer later sought to use these waivers to prevent them from litigating representative PAGA claims in any forum. (*Iskanian*, *supra*, 59 Cal.4th at pp. 360–361.) *Iskanian* held that the agreements' ban on bringing PAGA actions in any forum violated public policy. (*Iskanian*, at pp. 384–389.) *Iskanian* teaches that an individual employee cannot waive the right to bring a PAGA representative action in any forum before any dispute arises because such waiver would interfere with California's public policy to encourage the enforcement of the Labor Code through PAGA actions. (*Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 867.) A release by a PAGA representative in a court-approved settlement of a PAGA representative action does not hinder the enforcement of the Labor Code in the way that concerned the *Iskanian* court.

---

189 Cal.App.4th 562, and *Shine v. Williams-Sonoma, Inc.* (2018) 23 Cal.App.5th 1070, and we express no opinion on the validity of those decisions. Those cases are not on point, as they did not address the argument that a PAGA representative may only release PAGA claims listed in his or her PAGA notice.

We emphasize that we are not addressing the preclusive effect of any settlement in this case on *Doe* or any other litigation, nor could we. "The preclusive effect of a prior judgment is determined by the court in which it is asserted, not the court that rendered it." (*Fireside Bank Cases* (2010) 187 Cal.App.4th 1120, 1131.) We similarly express no view as to the merits of Adecco's claim that the release here does no more than preserve its res judicata defense under the primary rights doctrine. It is for future courts to decide the preclusive effect of any judgment in this case. (*Ibid.*) We simply reject Correa's argument that the release in this case was invalid because it purported to extend beyond a release of claims listed in Moniz's PAGA notice.[18]

## 2. Release of "Unpled Claims"

Correa next argues that the settlement is invalid because it releases "unpled claims," and a PAGA representative does not adequately represent the state in doing so. She does not elaborate on what she means by "unpled claims" in her opening brief, but her reliance on *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134 (*Trotsky*), suggests that she means to address the alleged "unpled" claims for civil penalties

---

[18] As noted, the settlement includes Moniz's release of her individual claims under Business and Professions Code section 17200, section 1833 of title 18 of the United States Code, and section 240.21F of title 17 of the Code of Federal Regulations. Although the record does not reflect its precise terms, Moniz also previously settled certain individual claims against Adecco. As the issue is not and cannot be presented in this appeal, we also express no opinion on whether res judicata would bar a subsequent suit by Moniz asserting individual claims seeking remedies other than civil penalties.

for alleged violations of sections 232, 232.5, 432.5, 1102.5, and 1197.5(k) suffered by Associates. We reject this argument because *Trotsky* is distinguishable.

In *Trotsky*, the complaint challenged the validity of three provisions contained in a form of trust deed and sought damages for moneys collected under these provisions. (*Trotsky*, *supra*, 48 Cal.App.3d at p. 140.) Plaintiffs' second amended complaint withdrew any challenge to the second of the three deed of trust provisions, and another plaintiff filed a separate class action regarding that provision. (*Id.* at p. 141.) The Trotsky parties settled the class action in an agreement that released the defendant from liability relating to all three deed of trust provisions. The appellate court reversed the settlement approval, finding that the settlement was outside the scope of the amended complaint, plaintiffs could not settle the claims of a class of plaintiffs they did not represent, and they could not provide adequate representation for a claim they did not allege and did not share with the class. (*Id.* at pp. 148–149.) The court noted that, although courts have concluded they have the power to approve the inclusion of additional claims in a settlement, broad releases should be avoided in class actions. (*Id.* at p. 148.) "Any attempt to include in a class settlement terms which are outside the scope of the operative complaint should be closely scrutinized by the trial court to determine if the plaintiff genuinely contests those issues and adequately represents the class." (*Ibid.*) The appellate court was also concerned because the parties failed to disclose the other class action to the court. (*Id.* at pp. 148–150.)

Unlike in *Trotsky*, the complaint here was sufficiently broad to include the alleged violations committed against Associates. Moniz alleged that she brought the action "on behalf of herself and other similarly situated individuals who have worked for [Adecco]." Her allegation that she challenged the "policy and practice of compelling employees to execute an 'Employment Agreement for Colleagues in California' ('Form Employment Agreement') containing an unlawful non-disclosure provision as a condition of their employment" may suggest a narrow challenge based on a single agreement. But Moniz also alleged that, "On information and belief, Adecco has continuously required its California employees to accept the terms of substantially the same Form Employment Agreement as a condition of their employment since December 21, 2007." And, while she recounted being required to sign the "Form Employment Agreement" that she attached to her complaint and alleged this conduct violated the Labor Code, she also broadly alleged, "[o]n information and belief, [Adecco's] conduct has been substantially the same at all relevant times throughout the state of California." By suing for those "who have worked for Adecco" and alleging that employees had to accept the terms of form employment agreements that were "substantially the same" as the one attached to the complaint, the complaint extended to other form employment agreements signed by Adecco employees, including Associates. Therefore, even assuming the legal principles at issue in *Trotsky* are applicable to this PAGA action, we are unpersuaded by Correa's argument that Moniz is an

inadequate representative with respect to alleged "unpled claims."[19]

### 3. Due Process Challenge

Invoking procedural due process, Correa contends that the trial court could not approve a release of PAGA or other claims that belong to nonparty aggrieved employees because the court lacked personal jurisdiction over these nonparties. In so arguing, Correa repeats the LWDA's objection in the trial court that "to the extent that [the settlement] purports to release the aggrieved employees' claims," it was void for lack of personal jurisdiction. For the same reason, Correa contends that the trial court could not approve a settlement waiving rights under Civil Code section 1542 for nonparty aggrieved employees. Correa's argument assumes that the settlement releases non-PAGA claims and that PAGA claims belong to nonparty aggrieved employees. Both assumptions are incorrect.

First, the released claims do not include nonparty employees' individual claims. The parties' May 2019 settlement purported to release claims beyond PAGA by releasing claims of aggrieved employees under other federal and state laws, but the trial court required the parties to narrow the scope of the release. Thus, as the trial court acknowledged, the redefined "released

---

[19] We note that this is not a class action like *Trotsky*, and PAGA does not subject a PAGA plaintiff or his or her counsel to scrutiny with respect to the ability to represent a class. (*Williams*, *supra*, 3 Cal.5th at pp. 546–547 & fn. 4; *Kim*, *supra*, 9 Cal.5th at p. 87.) Nonetheless, a different form of adequacy of representation is implicated by aspects of the settlement in this case, as we discuss, *post*.

claims" are "any and all known and unknown claims under the PAGA against the Released Parties that were or could have been pled based on the factual allegations of the Complaint."  The trial court similarly found that the Civil Code section 1542 waiver applied to the "respective released claims," and was limited to PAGA claims.  The court did not err in so ruling.

Second, to the extent Correa suggests that due process prevents a PAGA settlement from including a release of PAGA claims because those claims belong to nonparty aggrieved employees, our Supreme Court has instructed otherwise. (*Williams*, *supra*, 3 Cal.5th at p. 547, fn. 4 ["absent employees do not own a personal claim for PAGA civil penalties"]; *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003 [an aggrieved employee cannot assign a PAGA claim because the employee does not own an assignable interest].)  And nonparty employees' personal claims for relief are not at stake in a PAGA representative action. (*Iskanian*, *supra*, 59 Cal.4th at p. 381.)

## D.  Settlement Fairness

Correa's final challenge is to the fairness of the settlement itself.  She identifies the following alleged settlement deficiencies, which she contends show that the trial court abused its discretion in approving the settlement:  (1) the parties did not provide sufficient information to support the settlement "discount," and the court abused its discretion in deciding the settlement amount was fair; (2) the trial court ignored evidence of collusion; and (3) the settlement allocation of the aggrieved employees' share of

41

civil penalties was unjustified and unfair.  We find that Correa's third argument has merit and warrants reversal, so we decline to address the other two arguments.

We agree with Correa that the settlement's allocation of shares of civil penalties to Colleagues that are fifteen times greater than the shares allocated to Associates does not seem to have been justified below and may be contrary to PAGA's purposes.  A " '[PAGA representative] action to recover civil penalties "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." ' " (*Iskanian, supra,* 59 Cal.4th at p. 381.)  PAGA's allocation of a 25 percent share of civil penalties does not go disproportionately to the PAGA plaintiff and instead must be shared by all aggrieved employees.  (*Moorer v. Noble L.A. Events, Inc.* (2019) 32 Cal.App.5th 736, 742–743 [affirming order denying request for entry of a default judgment where PAGA plaintiff refused to comply with order to distribute 25 percent of the civil penalties to 23 aggrieved employees on a pro rata basis]; see *Iskanian, supra,* 59 Cal.4th at p. 382 [a PAGA representative action "conforms to the[ ] traditional criteria" for bringing a qui tam action, "except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation"]; *Williams, supra,* 3 Cal.5th at p. 545 [PAGA "deputiz[es] employees harmed by labor violations to sue on behalf of the state and collect penalties, to be shared with the state and other affected employees"].)

Here, the record does not reveal any basis for the disproportionate allocation of civil penalties amongst Colleagues and Associates. There were 61,634 aggrieved employees, consisting of 542 Colleagues and 61,092 Associates. In estimating the potential recovery in the case to evaluate the fairness of the settlement, the trial court assumed one violation of sections 232, 232.5, 432.5, and 1197.5(k) per employee given that employees signed the allegedly offending employment agreements once. On appeal, Adecco maintains that the trial court reasonably focused "on potential penalties calculated on a per-employee basis" rather than a per-pay period basis. Assuming a "realistic maximum" recovery of $100 for each of the four violations as the trial court did, each aggrieved employee would receive $100 (§ 2699, subds. (f)(2) & (i)). But the settlement allocated 88 percent of the aggrieved employees' share of the civil penalties to Associates and 12 percent to Colleagues, and, given the number of aggrieved employees in each group, each Associate was to receive $10.27 whereas each Colleague was to receive $157.92.[20]

---

[20] The trial court expressed doubt regarding Moniz's recovery on the section 1102.5 claim. "Plaintiff also alleged a claim under Section 1102.5, which prohibits an employer from preventing, barring, or retaliating against an employee who is a whistleblower to government agencies and regulators. Subsection f thereof states: 'In addition to other penalties, an employer that is a corporation or limited liability company is liable for a civil penalty not exceeding ten thousand dollars ($10,000) for each violation of this section.' 'Not to exceed' means that it could be as little as $1. No evidence is presented that anyone was actually prevented or impeded from an attempt to be

Importantly, this uneven allocation was not addressed in the trial court's order or at the hearings on the final proposed settlement, and respondents did not address it in their briefing on appeal. At oral argument, respondents stated that the allocation was justified by the strength of the Colleagues' claims versus the Associates' claims. Adecco also argued that the trial court's consideration of the fairness of the disparate allocation is demonstrated by its broad statement, "The settling parties have also set forth facts—and issues for which there is a lack of established case law—demonstrating the risks of proceeding to trial and difficulties of proof." Moniz, however, conceded at oral argument that the trial court focused on the overall settlement amount and the state's recovery, not on the allocation of civil penalties between Associates and Colleagues. The record supports Moniz's concession. In her motion for settlement approval, Moniz noted that there were substantive differences in the contract provisions, but she concluded, "Adecco has continually disputed that either of these provisions violate the California Labor Code, and Plaintiff faced significant risks associated with proving that either agreement violated the statutory provisions at issue."

Moniz and Adecco did not directly address the reasons for the difference in the allocation between Colleagues and Associates in their briefing below. Further, the only discussion of

_____

a whistleblower. Accordingly it is highly unlikely that $10,000, or multiples of $10,000, in civil penalties would be [assessed] against Defendants for any allege[d] violation of Section 1102.5."

the allocation of civil penalties between Colleagues and Associates that we have found occurred at the initial May 2019 settlement approval hearing as follows: "[The Court]: Okay. And the division between the people that were the full time versus the part time, giving a greater bulk to the part-time people, is that because there's so many of them? [Moniz's Counsel]: Yes, Your Honor." This dialogue does not support Adecco's position at oral argument that the trial court considered the fairness of the allocation between Colleagues and Associates in light of the purportedly greater strength of the Colleagues' claims. We therefore cannot infer, as Adecco suggests, that the analysis set forth in the trial court's approval order necessarily indicates that the court assessed the allocation and concluded it was fair. As such, we find that the trial court abused its discretion in approving the settlement.[21]

In reaching our conclusion, we are mindful that adequate representation is required to bind certain nonparties to a judgment under preclusion principles. As our high court has explained, in " 'certain limited circumstances,' " a nonparty may be bound by a judgment because she was " 'adequately represented by someone with the same interests who [wa]s a party' " to the suit. (*Taylor v. Sturgell* (2008) 553 U.S. 880, 894–895.) These circumstances include representative suits brought

---

[21] In light of our disposition, we do not address Correa's challenge to the trial court's ruling that she was not entitled to attorney fees and an incentive award or her argument that the settlement must be invalidated because there was no "meeting of the minds."

on a nonparty's behalf by an agent or proxy, such as this PAGA action. (*Arias*, *supra*, 46 Cal.4th at p. 986; *Taylor v. Sturgell*, at pp. 894–895; Rest.2d Judgments, § 41.) In review and approval of a proposed settlement under section 2699, subd. (*l*)(2), a trial court thus must scrutinize whether, in resolving the action, a PAGA plaintiff has adequately represented the state's interests, and hence the public interest. The unsubstantiated and disproportionate allocation of civil penalties between Associates and Colleagues provides sufficient cause for us to question the scrutiny applied here and remand the matter.

## DISPOSITION

The judgment is reversed.

BROWN, J.

WE CONCUR:

POLLAK, P. J.
STREETER, J.

*Moniz v. Adecco USA, Inc.* (A159410, A159978, A160133)

46

Trial Court:       San Mateo County Superior Court

Trial Judge:       Hon. Marie S. Weiner

Counsel:

Baker Curtis & Schwartz, Christopher D. Baker, Deborah R. Schwartz; Outten & Golden, Jahan C. Sagafi, Rachel Williams Dempsey, Julio Sharp-Wasserman for Movant and Appellant.

Schneider Wallace Cottrell Konecky, Carolyn Cottrell, David C. Leimbach, Kyle G. Bates for Plaintiff and Respondent.

Jackson Lewis, Adam Y. Siegel, Scott P. Jang, Mia Farber, Dylan B. Carp for Defendant and Respondent.